504 F.2d 462
 74-2 USTC P 9732
 CATTLE FEEDERS TAX COMMITTEE, an unincorporated association,
and Western Heritage Land and Cattle Company, a
partnership, Plaintiffs-Appellees,
v.
Hon. George SHULTZ, Secretary of the Department of the
Treasury of the UnitedStates of America, et al.,
Defendants-Appellants.
 No. 73-1896.
 United States Court of Appeals, Tenth Circuit.
 Oct. 4, 1974, Rehearing Denied Nov. 11, 1974.
 
 David H. Rosenberg and Ben L. Krage, of Rosenberg, Kasmir & Willingham, Dallas, Tex. (Cyril D. Kasmir, Dallas, Tex., with them on the briefs), for plaintiffs-appellees.
 Richard M. Roberts, Dept. of Justice, Washington, D.C. (Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, Crombie J. D. Garrett, and Carleton D. Powell, Tax Div., Dept. of Justice, Washington, D.C., on the briefs), for defendants-appellants.
 Before PICKETT, HILL and DOYLE, Circuit Judges.
 PICKETT, Circuit Judge.
 
 
 1
 The purpose of this action is to enjoin United States Treasury officials from enforcing a departmental ruling and for judgment declaring the ruling to be invalid. The rule affects farmers who file income tax returns on a cash receipts and disbursements basis and deduct as an ordinary business expense the cost of feed to be consumed by livestock in years other than the taxable year.[1] The trial court, following an evidentiary hearing on an application for a temporary injunction, considered the case on its merits, held that the Government could not ultimately prevail, and permanently enjoined the enforcement of the ruling. The decisive question presented is whether the action is barred by the Anti-Injunction Act, 26 U.S.C. 7421(a).[2] It is the Government's position that there are no special circumstances in this case which would prevent the application of the statute. We agree.
 
 
 2
 As alleged in the complaint, the Tax Committee is an unincorporated association whose members sponsor and form limited partnerships which principally engage in the purchasing, grazing, feeding and marketing of cattle. Western Heritage Land and Cattle Company is a partnership doing business in Oklahoma as the sponsor and general partner of limited partnerships which purchase, graze, feed, and market cattle. Western Heritage and those represented by the Tax Committee solicit investments from the public to be used in the purchase of cattle and feed. Although the investors are limited partners, the management of these public funded cattle-feeding and marketing programs is exclusively in those offering the investments. The feed for the cattle is generally purchased in the late months of the year but is not utilized until a following taxable year. Consequently, during a year in which the purchases are made there is no income and the relationship between the operating company and the investors is such that those who are on a cash basis of accounting may, in computing their income taxes for that year, deduct as an expense the full amount of their proportional share of the feed costs. The trial court found that the income distortion test provision of Rev. Rul. 73-530 may reasonably be expected to result in the disallowance of income tax deductions for prepaid feed to be used by farmers, resulting in a destruction of the incentive for investment in the cattle-feeding industry, thereby causing irreparable injury to appellees' businesses by depriving them of investment capital.
 
 
 3
 Income Tax Regulation 1.471-6(a) provides that a farmer 'may make his return upon an inventory method instead of the cash receipts and disbursements method. It is optional with the taxpayer which of these methods of accounting is used.' Income Tax Regulation 1.162-12 provides that the 'purchase of feed and other costs connected with raising livestock may be treated as expense deductions insofar as such costs represent actual outlay . . ..' No contention is made that the appellees are not farmers as the term is used in the regulations. See Hi-Plains Enterprises, Inc. v. C.I.R., 496 F.2d 520 (10th Cir. 1974). It is argued that the Internal Revenue Service is bound by these regulations and cannot require farmers, in computing their income taxes, to use inventories through the guise of the income distortion test.
 
 
 4
 The purpose of Section 7421(a) is to give the United States a free hand in assessing and collecting taxes claimed to be due without intervention on the part of the courts, and to limit a determination of disputed sums to a suit for refund. Enochs v. Williams Packing Co., 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962). The Williams Packing case recognized the broad sweep of the anti-injunction statute and held that an injunction could be obtained against the assessment of tax only upon a showing that two factors exist: (1) That under no circumstances could the Government ultimately prevail, and (2) a basis for equity jurisdiction exists. In recent decisions the Supreme Court has discussed the purpose of Section 7421(a) as interpreted by Williams Packing, supra, and others, particularly Miller v. Standard Nut Margarine Co., 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422 (1932), and under facts analogous to those of the instant case it held the statute applicable. Alexander v. 'Americans United' Inc., 416 U.S. 752, 94 S.Ct. 2053, 40 L.Ed.2d 518 (May 15, 1974); Bob Jones University v. Simon, 416 U.S. 725, 94 S.Ct. 2038, 40 L.Ed.2d 496 (May 15, 1974). In these two cases the complainants claimed they were within the tax exempt status of 26 U.S.C. 501(c)(3) and the Internal Revenue Service had issued the required letters which established that they were organizations to which tax deductible contributions could be made. The Internal Revenue Service later announced that, for stated reasons, the ruling letters would be revoked and donors would no longer have advance assurance that donations to the organizations would be treated as charitable contributions. In these cases it was held that actions to enjoin the revocation of the letters, although not brought by a taxpayer, were primarily to restrain the assessment and collection of a tax and within the prohibition of Section 7421(a). In Bob Jones, supra, 416 U.S. at 739, 94 S.Ct. at 2047, it is said:
 
 
 5
 . . . Moreover, petitioner seeks to restrain the collection of taxes from its donors-- to force the Service to continue to provide advance assurance to those donors that contributions to petitioner will be recognized as tax-deductible, thereby reducing their tax liability. Although in this regard petitioner seeks to lower the taxes of those other than itself, the Act is nonetheless controlling. Thus in any of its implications, this case falls within the literal scope and the purposes of the Act.
 
 
 6
 The appellees recognize the impact of the Bob Jones and Americans United decisions, but contend that if the action is one controlled by Section 7421(a), the record discloses that they are irreparably injured by the ruling with no adequate remedy at law and that the Government cannot ultimately prevail; therefore, they are within the Williams Packing exception. We think this contention is answered in the Bob Jones and Americans United cases. The Court, in Bob Jones, supra 416 U.S. at 742, 94 S.Ct. at 2048, said:
 
 
 7
 . . . Williams Packing indicates that the case was meant to be the capstone to judicial construction of the Act. It spells an end to a cyclical pattern of allegiance to the plain meaning of the Act, followed by periods of uncertainty caused by a judicial departure from that meaning, and followed in turn by the Court's rediscovery of the Act's purpose.[3]
 
 The Court continued:
 
 8
 Williams Packing switched the focus of the extraordinary and exceptional circumstances test from a showing of the degree of harm to the plaintiff absent an injunction to the requirement that it be established that the Service's action is plainly without a legal basis. The Court in essence read Standard Nut not as an instance of irreparable injury but as a case where the Service had no chance of success on the merits. 370 U.S. at 7, 82 S.Ct. at 1129. And the Court explicitly held that the Act may not be evaded 'merely because collection would cause an irreparable injury, such as the ruination of the taxpayer's enterprise.' Id., at 6, 82 S.Ct. at 1129. Yet petitioner's argument that we should find Williams Packing inapplicable turns, in the last analysis, on its claim that to do otherwise would subject it to great harm. The Court rejected that consideration in Williams Packing itself, and we reject it as a reason for finding that case not controlling. Under the language of the Act, the degree of harm is not a factor, and as a matter of judicial construction, it does not provide a meaningful stopping point between Standard Nut and Williams Packing. Acceptance of petitioner's irreparable injury argument would simply revive the evisceration of the Act inherent in Standard Nut. (416 U.S. at 745, 94 S.Ct. at 2050)
 
 
 9
 We are of the opinion that the appellees do not bring themselves with either of the two requirements of the Williams Packing case exception. The question of whether the Government can ultimately prevail must 'be determined on the basis of the information available to it at the time of suit. Only if it is then apparent that, under the most liberal view of the law and the facts, the United States cannot establish its claim, may the suit for an injunction be maintained.' 370 U.S., supra, at 7, 82 S.Ct. at 1129. The court's function in this injunction suit is not to try out the validity of Rev.Rul. 73-530, but to determine if there is any basis upon which the ruling can be upheld. 26 U.S.C. 461(a) provides:
 
 
 10
 The amount of any deduction or credit allowed by this subtitle shall be taken for the taxable year which is the proper taxable year under the method of accounting used in computing taxable income.
 
 The provisions of 26 U.S.C. 471 are:
 
 11
 Whenever in the opinion of the Secretary or his delegate the use of inventories is necessary in order clearly to determine the income of any taxpayer, inventories shall be taken by such taxpayer on such basis as the Secretary or his delegate may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income.
 
 
 12
 26 U.S.C. 446(a) provides that taxable income shall be computed under the method which the taxpayer regularly uses in computing his income. The Government argues that this provision is subject to that of Section 446(b), which requires the computation of taxable income to be made on a basis which clearly reflects income.[4] Sections 446 and 461(a) appear to implicitly allow the commissioner to adjust a taxpayer's method of computing taxable income in a manner which will clearly reflect income. Authority for this procedure is found in 26 U.S.C. 7801 et seq. We can not hold that the action of the Government in promulgating Rev.Rul. 73-530 is plainly without any legal basis or that it cannot ultimately prevail under any circumstances. Nor can we say as a matter of law that the ruling is not an interpretative action authorized by 26 U.S.C. 7801 et seq.
 
 
 13
 The appellees are in substantially the same situation as the complainants in Bob Jones and Americans United. In each instance they are not the taxpayer but allege an injury because third parties are adversely affected by I.R.S. rulings. In each case it was alleged that irreparable injuries occurred because the rulings effectually 'destroyed their business' with no remedy in the courts. As observed in Bob Jones and Americans United, allowing injunctive relief on irreparable injury alone would render Section 7421(a) meaningless. In Williams Packing the Court stated that if Congress had desired to make injunctive remedy available against the collection of federal taxes not lawfully due, it would have said so explicitly. It is now settled that the degree of harm is not a factor in determining the application of Section 7421(a). Bob Jones, supra; Williams Packing, supra. Furthermore, any investor in appellees' businesses could litigate the validity of the ruling in a suit for refund or in the Tax Court. It is indicated that at least some of the organizations represented by the Tax Committee and possibly Western Heritage could claim the cost of prepaid feed costs as an expense deduction and would be in a position to challenge the order.
 
 
 14
 Reversed and remanded with instructions to dismiss the action.
 
 
 
 [1]
 The ruling, Rev.Rul. 73-530 published in Internal Revenue Bulletin 1973-49 dated December 3, 1973, provides that before a farmer can deduct the cost of feed to be consumed by his livestock in the following year, three tests must be met: First, the expenditure must be a payment for the purchase rather than a mere deposit; second, the prepayment must be made for a business purpose, and not merely for tax avoidance; third, the deduction of such costs in the taxable year of prepayment must not result in a material distortion of income
 
 
 [2]
 Section 7421(a) provides that 'no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.'
 
 
 [3]
 This statement had reference to the Standard Nut and like cases. Referring to Standard Nut, the Court said:
 . . . Read literally, the Court's opinion effectively repealed the Act, since the Act was viewed as requiring nothing more than equity doctrine had demanded before the Act's passage . . .. (416 U.S. at 744, 94 S.Ct. at 2050)
 
 
 [4]
 The legislative history of Section 461 states:
 Section 461 adopts the provisions of section 43 of the 1939 Code in rearranged form. The timing of deductions . . . is determined by the taxpayer's method of accounting. The method must clearly reflect the income of the taxpayer. (3 U.S. Code Cong. & Admin.News (1954) p. 4300)