INVESTORS SYNDICATE OF AMERICA, INC., Plaintiff,

v.

William E. SIMON, Secretary of the Treasury, and Donald C. Alexander, Commissioner of Internal Revenue, Defendants.

Civ. A. No. 75–1984.

United States District Court, District of Columbia.

Dec. 29, 1975.

David W. Richmond, Robert L. Moore, II, Washington, D. C., for plaintiff.

Donald J. Gavin, John M. Cunningham, U. S. Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM OPINION

BRYANT, District Judge.

This case is before the Court on plaintiff's Motion For Preliminary Injunction and defendants' Motion To Dismiss. In this action plaintiff seeks to have the Court enjoin the January 1, 1976 implementation of Treasury Regulations § 1.1232–1(c)(3) and § 1.1232–3A(f)(1), while the government asks that the action be dismissed for an asserted lack of proper subject matter jurisdiction, pursuant to F.R.C.P. 12(b)(1) and the Anti-Injunction Act, 26 U.S.C. § 7421(a). This memorandum constitutes the findings of fact and conclusions of law in support of Court's order of December 24, 1975 denying plaintiff's motion and granting defendants' motion to dismiss.

Plaintiff, a subsidiary of financial conglomerate Investors Diversified Services,

is an investment corporation called, under the Investment Company Act of 1940, 15 U.S.C. § 80a–1 *et seq.,* a face amount certificate company (Pl. mem., p. 2). Under a typical face-amount certificate (hereinafter "certificate"), the certificate holder makes installment payments over a period of time (usually 15 years or 22 years) and upon maturity of the certificate is entitled to receive an amount equal to the face-amount of the certificate. The payout is usually in lump sum form, but some certificates may apparently be converted to payout as a annuity. A certificate may be surrendered before maturity for cash in an amount determined by reference to the table of cash surrender values shown on the certificate. For installment certificates (93.6% of the total maturity value of all certificates outstanding, *see* Complaint, ¶ 8), the stated cash surrender value does not equal or exceed the cumulative installment payments made by the holder until eight years have elapsed. Thereafter, the stated cash surrender value exceeds the amount paid in and increases until maturity when it equals the face amount of the certificate. The regulations in question would, pursuant to 26 `U.S.C. § 1232(a)(3), § 1232(a)(3) of the Internal Revenue Code of 1954, force certificate holders to report as income each year a ratable portion of the amount to be received as interest under the certificate at payout, i. e. the original issue discount. Plaintiff claims this requirement would make the certificates unmarketable, causing it irreparable injury.

■ As plaintiff concedes, the Anti-Injunction Act does apply to this case, and the holdings in *Enochs v. Williams Packing & Navigation Company,* 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962); *Bob Jones University v. Simon,* 416 U.S. 725, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974), and *Alexander v. "Americans United," Inc.,* 416 U.S. 752, 94 S.Ct. 2053, 40 L.Ed.2d 518 (1974) are controlling here. Those cases, interpreting the Act, hold in substance that for a court to enjoin "the assessment or collection of any tax", as

here, the plaintiff must show that there is equitable jurisdiction (irreparable injury, inadequate remedy at law) and must also show that under no circumstances could the government ultimately prevail, even under the most liberal view of the law and the facts.

■ The plaintiff's allegations, which were not seriously addressed by the government, appear to represent irreparable injury: the destruction of its business and the loss of its highly trained and experienced· sales force (which also markets other securities for IDS, the parent company). Since the tax is not to be imposed on plaintiff, but rather upon certificate holders, plaintiff appears to have no adequate remedy at law: it cannot contest the validity of the regulations through taxpayer litigation after assessment or collection of the tax, *see Bob Jones, supra,* 416 U.S. at p. 746 and at p. 747, 94 S.Ct. 2038, n. 21.

■ Like the plaintiffs in *Cattle Feeders Tax Committee v. Shultz,* 504 F.2d 462 (10th Cir., 1974), however, plaintiff here has not carried the burden of showing that under no circumstances can the government ultimately prevail in this action. Unlike the situation in *Cattle Feeders,* whether the government could prevail here is a purely legal question, involving only statutory construction of certain sections of the Code. In order to prevail, therefore, plaintiff must show that the government does not have a solid, substantial legal basis for enacting the disputed regulations. This the plaintiff has not done.

Plaintiff argues that prior to the enactment of Internal Revenue Code § 1232(a)(3) in the Tax Reform Act of 1969, P.L. 91–172, December 30, 1969, Title IV, § 413(a), (b), 83 Stat. 609, 611, the taxability of face-amount certificates was governed by § 72, although at oral argument of this matter counsel conceded that for certain purposes § 1232 would be applicable instead. Under § 72(a), plaintiff contends, a certificate may not be taxed until maturity or earlier surrender. The 1969 Act, according to plaintiff, did not alter that situation.

Plaintiff relies chiefly upon Code §§ 1232(d) and 72(*l*) and Treasury Regulation § 1.1232–1(c) (revoked in 1971) to sustain its position. They provide:

§ 1232(d) Cross Reference.—

For special treatment of face-amount certificates *on retirement,* see section 72. (emphasis added)

§ 72(*l*) Face-Amount Certificates.— *For purposes of this section,* the term "endowment contract" includes a face-amount certificate, as defined in section 2(a)(15) of the Investment Company Act of 1940 (15 U.S.C., Sec. 80a–2), issued after December 31, 1954. (emphasis added)

Regulation § 1.1232–1 Bonds and other evidences of indebtedness; scope of section

(a) In general. * * *

(b) Requirement that obligations be capital assets. * * *

(c) Face-amount certificates. The taxability of *amounts received under* "face-amount certificates", as defined in sections 2(a)(15) and 4 of the Investment Company Act of 1940 (15 U.S.C.A. 80a–2 and 80a–4) which are issued after December 31, 1954, is governed by section 72, rather than section 1232, and is, therefore, subject to the limit on tax provided by section 72(e)(3). See section 72(*l*). As amended T.D. 6468. June 7, 1960, 25 F.R. 4988. (emphasis added)

Plaintiff believes that the Code sections operate to entirely remove taxation of income under certificates from the purview of § 1232 and places it instead under § 72. The cited regulation, according to plaintiff, represents the concurrence of the government in that view.

■ The government argues in response that § 1232(d) does not wholly remove certificates from the coverage of that section, but rather places them under § 72 only for certain purposes. It contends therefore that Congress in the 1969 Act did not intend to exempt certificates from the ratable taxation requirement of § 1232(a)(3), applicable during the period during which the certificate is held by its owner. The Court cannot find that the government's position is without substantial legal basis.

As the government points out, one of the original purposes of § 1232 was to reverse the result in the case of *George Peck Caulkins,* 1 T.C. 656, aff'd, 144 F.2d 482 (6th Cir., 1944), which held that income received upon maturity and retirement of certain "Accumulative Installment Certificates", the predecessors of face-amount certificates, was entitled to capital gains treatment. The section reversed that outcome by providing that the deferred interest income represented by the original issue discount, paid at maturity by the issuer to the holder of an evidence of indebtedness was to be treated as ordinary income. Sections 1232(d) and 72(*l*) were characterized at that time by the Senate committee's technical explanation as "relief provisions" applicable to certificates upon redemption at maturity. S.Rep.No.1622, 83rd Cong., 2d Sess. (1954), p. 435. Treasury Regulation § 1.1232–1(c) was promulgated in 1957 to implement that relief. Its chief component was to permit the use of the income averaging provisions of § 72(e)(3) upon maturity and payout of the certificate.*

■ The government's position is reinforced by the actual language of the provisions. Section 1232(d) is denoted specifically as a cross-reference, not as a substantive provision. It was by its terms only used to indicate that certain other provisions, i. e. § 72, applied to the taxation of certificates *on retirement,* not to substantively exempt certificates from all treatment under other parts of § 1232. The government's interpretation is also confirmed by the language of § 72(*l*), which states that certificates are to be treated as endowment contracts

---

* Section 72(e)(3) was repealed upon enactment of the general income-averaging provisions of the Code, §§ 1301–1305, effective January 1, 1964.

only *for purposes of that section.* The net effect of those provisions was to treat *amounts* received upon retirement of the certificates under the annuity and income tax limit provisions of § 72, not to exempt the certificates from the other provisions of § 1232. Indeed, plaintiff does not contest that such amounts are to be treated as ordinary income, as prescribed by § 1232. Treasury Regulation § 1.1232–1(c) is consistent with that interpretation, providing that taxation of amounts so received is limited by the provisions of § 72, such as § 72(e)(3). Furthermore, the words of § 72(*1*) itself show that the certificates were to be considered endowment contracts only for purposes of that section, not for purposes of characterization of the income as ordinary or capital gain under § 1232.

The structure of the statutory scheme also supports the government's argument. Section 1232 was addressed to two situations dealing with evidences of indebtedness: retirement and sale/exchange. Prior to the 1969 Act, the section did not address the question of the timing of the taxation, instead addressing itself to characterization of the income in either of those two situations, taking the then-current deferral rule as a given. Such income, upon retirement or sale/exchange, was characterized as ordinary income to the extent of the original issue discount, as defined therein. That the government regarded face-amount certificates as among the evidences of indebtedness covered by the rules of § 1232 is illustrated by Regulations §§ 1.1232–3(b)(1) and 1.1232–3(b)(2)(i), in effect prior to the 1969 Act. Those regulations define redemption price at maturity and issue price in reference to the certificates for purposes of computing the gain to be characterized by § 1232 upon retirement or sale/exchange.

What the 1969 Act did was simply to subject to ratable taxation during the period of holding any securities issued after the effective date of the Act and otherwise already subject to the characterization provisions of § 1232. It neither expanded nor contracted the class of obligations covered. Under the revised section, subsection (a)(2)(B) states the old rule, applicable to securities issued before the effective date of the revision, and covering "bonds or other evidences of indebtedness". The new rule, applicable to securities issued after the effective date of the revision, is stated in subsections (a)(2)(A) and (a)(3)(A), and ratably taxes the very same "bonds or other evidences of indebtedness", with corresponding adjustments to basis provided for in subsection (a)(3)(E). No change is made in the class of securities covered from the old rule to the new rule. It is evident, therefore, that since certificates were among the "bonds or other evidences of indebtedness" covered during the period of their holding (i. e. prior to maturity) under the old rule for all purposes (i. e. characterization of income at sale/exchange) and covered at retirement for all purposes but the few relief provisions effected by § 72, they are likewise covered by the new rule, addressing a new situation (i. e. treatment during period of holding for income recognition purposes). The Court concludes, therefore, that the government has a substantial basis for its action in promulgating the disputed regulations; the action must therefore be dismissed.