**INVESTMENT ANNUITY, INC., et al., Plaintiffs,**

v.

**W. Michael BLUMENTHAL et al., Defendants.**

**Civ. A. No. 77–810.**

United States District Court, District of Columbia.

July 12, 1977.
Supplementary Order of Sept. 28, 1977.

---

Herbert L. Awe, William L. Goldman, Joseph B. Levin, Washington, D.C., for the plaintiffs.

Donald J. Gavin and John M. Cunningham, Tax Division, Dept. of Justice, Washington, D.C., for defendants.

CHARLES R. RICHEY, District Judge.

This case came before the Court on June 17, 1977, for oral argument on defendants' motion to dismiss and plaintiffs' motion for preliminary injunction. After hearing oral argument, the Court denied defendants' motion to dismiss, but took under advisement plaintiffs' motion for preliminary injunction. While the Court had plaintiffs' motion under advisement, the parties, on June 27, 1977, stipulated that no material facts were in dispute and that a final disposition of the case on the merits would be appropriate.

Upon reconsideration of its June 17, 1977, ruling from the bench, which denied defendants' motion to dismiss, the Court has concluded, for the reasons stated herein, that a ruling on the motion to dismiss should be deferred pending good-faith efforts by the plaintiffs to stage a "friendly" third-party challenge to Revenue Ruling

77–85 by way of either a Tax Court or a refund suit.

## I. BACKGROUND

This case concerns the tax treatment to be accorded to what have been termed *investment annuity contracts*. Specifically, the legal issue before the Court is whether investment annuity contracts are "contracts with reserves based on a segregated asset account" within the meaning of section 801(g)(1)(B) of the Internal Revenue Code, 26 U.S.C. § 801(g)(1)(B).

An investment annuity contract is like a conventional annuity contract in that both involve the purchase by the policyholder of a promise by the insurer to make payments to the annuitant at a specified maturity date (often the annuitant's date of retirement). As in the case of all annuities, the investment annuity is predicated on actuarily-derived mortality and expense guaranties made to the policyholder by the insurance company. An investment annuity is like a variable annuity (and unlike a fixed-dollar annuity) in that the amount of the annuities paid on or after the maturity date reflect the investment return and market value of the "segregated asset account." The unique feature of an investment annuity contract—and the only substantive difference between it and other variable annuity arrangements—is that a separate "segregated asset account," known as a "custodial account," is established for each investment annuity contract, and the policyholder (rather than the insurance company) directs how the assets in the custodial account are to be invested.[1]

This case arises out of the action of the Internal Revenue Service (IRS) in issuing Revenue Ruling 77–85 on March 9, 1977. Internal Revenue Bulletin No. 1977–15, at 7–9 (April 11, 1977). Prior to that date, and since 1965,[2] the IRS had treated investment annuity contracts as conventional segregated asset annuity accounts with the result that they were entitled to the favorable tax treatment afforded by section 801(g)(1)(B). In brief, the tax advantages of such treatment are: (1) the annual investment return of the segregated asset account is included not in the policyholder's gross income, but rather in the investment yield of the insurance company, *see* 26 U.S.C. § 804(c), with the result that such investment return is taxed to the insurance company at a "favorable" rate; and (2) when the annuities are paid upon maturity, the gain reflected in the annuity payments, *see* 26 U.S.C. §§ 72(a)–(c), is then included in the annuitant's gross income.[3] Revenue Ruling 77–85 reversed the previous determination by the IRS and held that investment annuity contracts are *not* "contracts with reserves based on a segregated asset account" within the meaning of section 801(g)(1)(B). The effect of this ruling is that all income produced by the assets in the custodial account are includible in the gross income of the policyholder for the year in which they become added to the custodial account. The Ruling did, however, "grandfather" all existing investment annuity contracts by holding that all such contracts will continue to be treated for tax purposes as "contracts with reserves based on segregated asset accounts" within the meaning of section 801(g)(1)(B).

Plaintiffs herein are Investment Annuity, Inc. (IA) and First Investment Annuity Co. (FIAC). FIAC is a wholly-owned subsidiary of IA and is IA's sole business. FIAC is

---

**1.** The "custodial account" is so-called because it is administered by a third-party custodian, generally a bank selected by the policyholder.

**2.** The first letter ruling on the tax treatment to be accorded investment annuity contracts is dated August 10, 1965. (Exhibit B, Letter from John W. S. Littleton, Director, Income Tax Division, to John A. Cardon). Subsequent letter rulings consistent with this 1965 ruling were issued on November 8, 1965 (Exhibit C), November 29, 1967 (Exhibit D), and April 25, 1972 (Exhibit E).

On October 20, 1976, the Service announced in News Release IR–1679 that it was reconsidering the tax treatment accorded investment annuity contracts.

**3.** An annuitant will benefit from such "deferred" tax treatment if, when the annuity is paid, the annuitant has less taxable income (and is thus in a lower tax bracket) than he has in the year(s) the investment yields profits.

licensed in Pennsylvania as a legal reserve life insurance company and was organized for the purpose of issuing and marketing investment annuities of various types. Upon being advised of the substance of Revenue Ruling 77–85, as well as actions taken by the Securities and Exchange Commission and the Insurance Commissioner of the Commonwealth of Pennsylvania in anticipation of the Ruling,[4] plaintiff FIAC immediately ceased selling investment annuity contracts. It has not, since March 9, 1977, sold any new investment annuity contracts, nor has it received any additional contributions to existing accounts. Plaintiffs now seek a declaratory judgment that Revenue Ruling 77–85 is unlawful, beyond statutory authority, and in violation of the Internal Revenue Code. In addition, they seek injunctive relief to restrain the defendants from implementing Revenue Ruling 77–85 and from refusing to treat investment annuity contracts as within the purview of section 801(g)(1)(B).

## II. DEFENDANTS' MOTION TO DISMISS

As a threshold matter, defendants have moved to dismiss this case on the ground that the action is barred in its entirety by the Anti-Injunction Act, 26 U.S.C. § 7421(a).[5] In addition, although they have not strenuously pressed the argument, defendants contend that plaintiffs have no standing to maintain this action. The

Court, in its ruling from the bench on June 17, 1977, rejected both these arguments. The Court continues to find defendants' contention that plaintiffs lack standing to be without merit. However, for the reasons stated herein, the Court concludes that, in light of the Anti-Injunction Act, this suit for declaratory and injunctive relief cannot be maintained at least until plaintiffs have demonstrated to the Court that they have made all good-faith efforts to stage a "friendly" third-party challenge to Revenue Ruling 77–85.

The Anti-Injunction Act, 26 U.S.C. § 7421(a), upon which defendants primarily rely in moving to dismiss this action, provides:

> Except as provided in [certain sections not here pertinent], no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.

The purpose of this Act was described by the Supreme Court in the seminal case of *Enochs v. Williams Packing & Navigation Co.,* 370 U.S. 1, 7, 82 S.Ct. 1125, 1129, 8 L.Ed.2d 292 (1962):

> The manifest purpose of § 7421(a) is to permit the United States to assess and collect taxes alleged to be due without judicial intervention, and to require that the legal right to the disputed sums be determined in a suit for refund. . . .

---

**4.** FIAC had been selling its investment annuity contracts in reliance on a no-action letter issued by the Securities and Exchange Commission. On March 7, 1977, the SEC, in anticipation of Revenue Ruling 77–85, rescinded its no-action assurance. Also in anticipation of Revenue Ruling 77–85, the Insurance Commissioner of the Commonwealth of Pennsylvania, on March 8, 1977, notified FIAC that no further sales of investment annuity contracts could be made without his prior approval.

**5.** Defendants contend that the "except with respect to Federal taxes" clause of the Declaratory Judgment Act, 28 U.S.C. § 2201, also bars this suit. While it is settled that the federal tax exception to the Declaratory Judgment Act is at least as broad as the Anti-Injunction Act, *see Bob Jones University v. Simon,* 416 U.S. 725, 733 n.7, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974),

the Supreme Court has not ruled on whether the Declaratory Judgment Act is even more preclusive. *Id.* However, the Court of Appeals for this Circuit has held that the Declaratory Judgment Act is *coterminous* with the Anti-Injunction Act, *"Americans United" Inc. v. Walters,* 155 U.S.App.D.C. 284, 477 F.2d 1169, 1176 (1973), *rev'd on other grounds, Alexander v. "Americans United" Inc.,* 416 U.S. 752, 94 S.Ct. 2053, 40 L.Ed.2d 518 (1974); *Eastern Kentucky Welfare Rights Organization v. Simon,* 165 U.S. App.D.C. 239, 506 F.2d 1278, 1285 (1974), *vacated on other grounds,* 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976); and this Court has adhered in the past to this interpretation. *Center on Corporate Responsibility v. Shultz,* 368 F.Supp. 863, 879 n.34 (D.D.C.1973). Accordingly, it is unnecessary to consider defendants' Declaratory Judgment Act argument.

The Court, however, recognized an exception to the literal proscription of the Act:

[I]f it is clear that under no circumstances could the Government ultimately prevail, the central purpose of the Act is inapplicable and the attempted collection may be enjoined if equity jurisdiction otherwise exists.

370 U.S. at 7, 82 S.Ct. at 1129. *See Center on Corporate Responsibility v. Shultz,* 368 F.Supp. 863, 878–80 (D.D.C.1973).

In support of their motion to dismiss, defendants assert that (1) the Anti-Injunction Act is applicable here since this suit effectively seeks to restrain the assessment or collection of taxes (from annuitants), and (2) the *Williams Packing* exception to the Act is inapplicable since this case is not one in which "under no circumstances could the Government ultimately prevail." 370 U.S. at 7, 82 S.Ct. at 1129. Plaintiffs, in fact, do not contest that this suit seeks to restrain the assessment or collection of taxes; nor do they seriously contend that the *Williams Packing* exception is applicable to the present case. Rather, plaintiffs argue that the Anti-Injunction Act is inapplicable herein because the Act was not intended to bar suits seeking injunctive and/or declaratory relief in the district courts by aggrieved plaintiffs that have no other access to judicial review by way of either a Tax Court or a refund suit.

Plaintiffs' contention that the Anti-Injunction Act is inapplicable in cases in which the plaintiff has no other means of obtaining judicial review of an IRS action (and that such a case falls within a "second exception" to the Act, separate and distinct from the *Williams Packing* exception) has been expressly left unresolved by the Supreme Court. In *Bob Jones U.,* the Court said:

This is not a case in which an aggrieved party has no access at all to judicial review. Were that true, our conclusion might well be different.

416 U.S. at 747, 94 S.Ct. at 2050. Notwithstanding the *Bob Jones U.* Court's decision not to address this issue, this Court concludes that the Anti-Injunction Act was not intended to preclude pre-enforcement review of Service actions where the action will otherwise *never* be subject to judicial review. *See National Restaurant Association v. Simon,* 411 F.Supp. 993, 995–96 (D.D.C.1976). *Cf. Eastern Kentucky Welfare Rights Organization v. Simon,* 165 U.S.App. D.C. 239, 506 F.2d 1278, 1284 (1974), *vacated on other grounds,* 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976). Any contrary conclusion would raise serious questions about the constitutionality of the Anti-Injunction Act in such cases for, as Justice Brandeis said in *Phillips v. Commissioner,* 283 U.S. 589, 596–97, 51 S.Ct. 608, 611, 75 L.Ed. 1289 (1931), "mere postponement of the judicial enquiry [in taxation cases] is not a denial of due process, *if the opportunity given for the ultimate judicial determination of the liability is adequate.*" (Emphasis added.) *See also Commissioner v. Shapiro,* 424 U.S. 614, 629–32, 96 S.Ct. 1062, 47 L.Ed.2d 278 (1976).

This conclusion that the Anti-Injunction Act was not intended to bar suits for declaratory and/or injunctive relief when the Service action will otherwise never be subject to judicial review is not, however, dispositive of the instant case: The circumstances of this case are more complex than that. Here, it is undisputed that plaintiffs themselves have no means of obtaining judicial review: The effect of Revenue Ruling 77–85 is that all investment gains in the custodial account will be treated as includible in the gross income of the policyholder rather than the insurance company (here, plaintiff FIAC). Since plaintiffs' taxes will necessarily be *lower* as a result of the Ruling, plaintiffs will *never* have an opportunity to bring either a refund action pursuant to 26 U.S.C. § 7422 or a Tax Court challenge to a deficiency assessment.

Moreover, as a result of the grandfather clause included by the Service in the Ruling for extant investment annuity contracts, no present policyholders will incur higher taxes as a result of the Ruling, and thus be able to challenge the Service's Ruling, *unless* they make an additional contribution to

their custodial account. And, as a result of plaintiffs' cessation of sales in response to the Ruling, the rescission by the SEC of its prior "no-action" letter, and the advance notice requirement imposed by the Pennsylvania Insurance Commissioner, no new investment annuity contracts are being sold at least pending the outcome of this suit. However, a third-party could be in a position to challenge Revenue Ruling 77–85 if either (1) a "friendly" present policyholder, *see Bob Jones University v. Simon,* 416 U.S. at 748 n.21, 94 S.Ct. 2038, were to contribute an additional sum to his present custodial account (and thereby run the risk of losing the grandfather protection for the entire account), or (2) plaintiff FIAC were to sell a new account to a "friendly" purchaser. Thus, while it would require "staging," it is at least theoretically feasible for a "third-party" policyholder to obtain judicial review of Revenue Ruling 77–85. The present case is therefore one that "turns upon . . . resolution" of a second issue left unresolved by the Supreme Court in *Bob Jones U.*—whether the availability

of a third-party suit "constitutes an adequate legal remedy for correcting illegal actions on the part of the Service," 416 U.S. at 748 n.21, 94 S.Ct. at 2051; in other words, whether the unavailability of a first-party suit (notwithstanding the potentiality of a third-party suit) is tantamount to "no access at all to judicial review." [6]

■ The Court has given careful consideration to the due process implications of requiring plaintiffs herein to stage and then rely upon a third-party suit to challenge the legal basis of Revenue Ruling 77–85. In particular, the Court has focused on the concerns that (1) it may be difficult for plaintiffs to find an appropriate third-party willing to challenge the Ruling here in issue by means of either a Tax Court suit or a refund suit in either the district court or the Court of Claims, and (2) it may be fundamentally unfair to require plaintiffs to rely upon such a third-party to proffer the relevant legal arguments on plaintiffs' behalf. *See Bob Jones University v. Simon,* 416 U.S. at 747 n.21, 94 S.Ct. 2038; note 6

**6.** It should be noted that the phrase "adequate legal remedy" as used by the Supreme Court in footnote 21 of the *Bob Jones U.* opinion is somewhat ambiguous. It is at least arguable that the Court intended by its use of this phrase to suggest that the unavailability of a first-party suit is an appropriate consideration in determining whether a given plaintiff is suffering irreparable injury, an "essential prerequisite for injunctive relief under traditional equitable standards and only one part of the *Williams Packing* test." *Alexander v. "Americans United" Inc.,* 416 U.S. 752, 762, 94 S.Ct. 2053, 2059 (1974) (companion case to *Bob Jones U.*). The Supreme Court itself recognized the ambiguity of this phrase in *"Americans United", id.* at 761–62, 94 S.Ct. 2053, and at least one lower court has apparently interpreted "adequate legal remedy" to be merely a consideration relevant to a finding of irreparable injury. *Investors Syndicate of America, Inc. v. Simon,* 407 F.Supp. 83, 85 (D.D.C.1975) (Court first concluded that plaintiff corporation had no "adequate remedy at law" since only certificate holders, whose taxes would be increased, would have first-party suit; court then considered first prong of *Williams Packing* exception and concluded that "plaintiff has not carried the burden of showing that under no circumstances can the government ultimately prevail in this action.") *See also Cattle Feed-*

*ers Tax Committee v. Shultz,* 504 F.2d 462 (10th Cir. 1974).

Notwithstanding this ambiguity, this Court feels confident that its interpretation of the phrase "adequate legal remedy" as a possible second exception to the Anti-Injunction Act is fully supported by the context of footnote 21 in the *Bob Jones U.* opinion and by the Court's subsequent discussion in *"Americans United".* The text immediately preceding footnote 21 emphasizes the Court's conclusion that plaintiff Bob Jones U. was afforded "a full, albeit delayed, opportunity to litigate the legality" of the Service's action. 416 U.S. at 746, 94 S.Ct. at 2051. Moreover, footnote 21 itself indicates that one of the Court's concerns with regard to the adequacy of third-party suits was that the aggrieved party "must rely on the [third-party] to present the relevant arguments on [its] behalf." 416 U.S. at 747 n.21, 94 S.Ct. at 2051. In *"Americans United",* the Court concluded that a refund action by the plaintiff organization was adequate to give plaintiff "a full opportunity to litigate the legality of the Service's [action]." 416 U.S. at 762, 94 S.Ct. at 2059. This repeated concern indicates that the Court intended the phrase "adequate legal remedy" to mean adequate opportunity to challenge the legal basis of the action giving rise to plaintiff's alleged injury.

*supra.* On the other hand, the Court cannot ignore that a "manifest purpose" of the Anti-Injunction Act is to require, *whenever possible,* that the legal right to disputed tax funds be litigated either in a refund or Tax Court suit. *See Enochs v. Williams Packing & Navigation, Inc.,* 370 U.S. at 7, 82 S.Ct. 1125; *Bob Jones University v. Simon,* 416 U.S. at 736–37, 94 S.Ct. 2038. Moreover, in assessing the aforementioned factors, the Court must be mindful that consideration of the irreparable injury that plaintiffs might incur as a result of the more prolonged and circuitous route of third-party litigation is not a pertinent consideration in determining whether a third-party suit would afford plaintiffs herein "an adequate legal remedy." *See Enochs v. Williams Packing & Navigation,* 370 U.S. at 6, 82 S.Ct. 1125.

■ Upon consideration of these factors in the context of this case, the Court concludes that the result reached by the District Court for the District of Delaware in *International Telephone & Telegraph Corp. v. Alexander,* D.C., 396 F.Supp. 1150 (1975) [hereinafter, *ITT*], albeit on slightly different facts, represents the appropriate resolution of the countervailing interests. The *ITT* court discussed a number of ways in which the plaintiff corporation therein, which like plaintiffs herein could not itself challenge the Service's action by way of a Tax Court or refund suit, could ensure that the relevant legal arguments were fully presented to the appropriate tribunals. Among these ways were: amicus curiae; intervention; and "friendly taxpayer-shareholder" suit. The Court expressly said:

> Were this an action in which ITT alleged that the aforegoing opportunities to

present its grievances were foreclosed, the Court might not be inclined to construe Sections 7421(a) and 2201 as jurisdictional bars to the instant proceeding. Such, however, is not the case.

396 F.Supp. at 1168. Thus, the court dismissed ITT's complaint for want of jurisdiction.

The present case is unlike *ITT* in that plaintiffs herein would have to take certain affirmative steps merely to enable a "friendly" third-party taxpayer-policyholder, such as a director, to challenge Revenue Ruling 77–85 by way of a Tax Court or refund suit. For example, plaintiff FIAC would have to sell a new investment annuity policy to such a "friendly" third-party since all extant policyholders have been immunized from the effect of the Ruling as a result of the grandfather clause. The Court has every reason to believe, however, that if such a sale could be arranged, plaintiffs would be able to participate fully with the "friendly" policyholder-taxpayer in the presentation of a full and adequate legal challenge to the Ruling before an appropriate tribunal *no less than if* plaintiffs themselves were subject to tax liability resulting from the Ruling. While the Court finds the "staging" necessary to arrange such a third-party suit to be distasteful as a matter of policy, the Court concludes that the Anti-Injunction Act demands, at the very least, that plaintiffs make all good-faith efforts to bring about such a suit so that the legality of the Service's action can be litigated either in a Tax Court suit or in a refund suit in either the district court or the Court of Claims.[7]

This conclusion compels the Court, as a final matter, to ascertain whether the plain-

---

**7.** As noted above, a second way in which plaintiffs could stage a friendly third-party challenge to Revenue Ruling 77–85 is if an existing investment annuity policyholder could be induced to make additional contributions to his custodial account. The Court recognizes that no reasonable policyholder is likely to make such an additional contribution in the face of the Service's ruling that *such a present policyholder's existing account will only be protected*

*if* "there are no other contributions to such accounts after March 9, 1977." Revenue Ruling 77–85. It appears to the Court that if the Service were willing to except from this "sanction" a contribution or contributions designed to give rise to a friendly third-party suit, as described herein, then plaintiffs may be in a better position to stage such a third-party challenge to Revenue Ruling 77–85 by way of a Tax Court or refund suit.

tiffs herein have made the requisite "good-faith efforts." Based upon the representations made by counsel in their memoranda and in their oral arguments, the Court finds that plaintiffs have *not* as of this date satisfied the Court that they have made all good-faith efforts to stage a friendly third-party suit. The Court recognizes that the actions of the SEC and the Insurance Commissioner of Pennsylvania, which were taken in anticipation of Revenue Ruling 77–85, present obstacles to the sale of a new investment annuity policy for the purpose of staging a friendly third-party suit. However, at the very least, plaintiffs must attempt in good-faith to procure permission from both of these entities for the limited purpose of challenging the legality of Revenue Ruling 77–85. Accordingly, the Court will at this time reserve ruling on defendants' motion to dismiss (as well as plaintiffs' pending motion on the merits).

The Court will give plaintiffs until September 9, 1977, to make all good-faith efforts to procure permission from the SEC and the Pennsylvania Insurance Commissioner for the sale of a new investment annuity contract (or contracts) in order to stage a friendly third-party challenge to Revenue Ruling 77–85. If such efforts are of no avail, plaintiffs shall file appropriate affidavits with the Court by September 13, 1977. Defendants shall then have until September 19, 1977, to submit such affidavits, if any, they deem appropriate. The Court will then reconsider whether to deny defendants' motion to dismiss.

An Order in accordance with the foregoing will be issued of even date herewith.

## SUPPLEMENTARY ORDER

■ By Order and Memorandum Opinion of July 12, 1977, the Court deferred ruling on defendants' pending motion to dismiss to permit plaintiffs an opportunity "to stage a 'friendly' third-party challenge to Revenue Ruling 77–85 by way of either a Tax Court or a refund suit." In accordance with the aforesaid Order and Memorandum Opinion, plaintiffs attempted to procure permission from both the Insurance Commissioner of the Commonwealth of Pennsylvania and the Securities and Exchange Commission "for the sale of a new investment annuity contract (or contracts) or to accept an additional contribution under an existing contract in order to stage a friendly third-party challenge to *Rev. Rul.* 77–85 through a Tax Court or refund suit." *See* Exh. A to Plaintiff's Response to Court's Opinion and Order of July 12, 1977 (hereinafter, Plaintiffs' July 26, 1977 Response).

Both the Insurance Commissioner of the Commonwealth of Pennsylvania and the Securities and Exchange Commission responded to plaintiffs' request. The Insurance Commissioner denied plaintiffs' request both because of the legal issues raised thereby and because he deemed the request to be contrary to the public interest. *See* Exh. B to Plaintiffs' July 26, 1977 Response. The Securities and Exchange Commission also refused plaintiffs' request: It concluded that in view of the decision by the Insurance Commissioner, "it would be inappropriate to give further consideration to [plaintiffs'] July 18, 1977 letter requesting a 'no-action' position with respect to the sale of a single investment annuity contract." *See* Plaintiffs' Supplemental Response to Court's Opinion and Order of July 12, 1977.

Upon consideration of these denials of plaintiffs' requests, the affidavits and memoranda submitted by the parties in response to the Court's Order and Memorandum Opinion, and particularly the parties' responses to the Court's direction of September 6, 1977, that the parties work together to explore possible ways of arranging a friendly third-party challenge to *Rev. Rul.* 77–85, as well as the entire record herein, the Court concludes that plaintiffs have now made *all* "good-faith efforts to bring about [a friendly third-party] suit so that the legality of the Service's action can be litigated either in a Tax Court suit or in a refund suit in either the district court or

the Court of Claims." *See* Memorandum Opinion, at 10. The Court finds that notwithstanding these efforts, plaintiffs have been *totally* unable to make any sale (or procure any additional contribution to an existing contract) for the purpose of staging a third-party challenge to the Service's action without transgressing the clear and unequivocal ruling of the Insurance Commissioner of the Commonwealth of Pennsylvania and without flaunting the enforcement authority of the Securities and Exchange Commission. In view of these impediments to the sale of any additional investment annuity contracts (and to the acceptance of any additional contributions on existing contracts), the Court concludes, both as a matter of fact and as a matter of law, that this case is one "in which the aggreived party has *no access at all* to judicial review." *See Bob Jones University v. Simon,* 416 U.S. 725, 747, 94 S.Ct. 2038, 2050, 40 L.Ed.2d 496 (1974).

This conclusion compels the Court to deny defendants' motion to dismiss for, as the Court previously concluded in its Memorandum Opinion of July 12, 1977, "the Anti-Injunction Act was not intended to preclude pre-enforcement review of Service actions where the action will otherwise *never* be subject to judicial review." *See* Memorandum Opinion, at 6.[1]

Accordingly, the Court is now prepared to consider the merits of plaintiffs' challenge to *Rev. Rul.* 77–85. It appears to the Court that, because of the extraordinary amount of attention that the parties have necessarily devoted to the complex jurisdictional questions herein, the parties may wish to supplement their original memoranda on the merits. The Court will therefore allow both parties until October 4, 1977, to file additional memoranda on the merits, and will allow both parties until October 7, 1977, to file any replies to such supplemental memoranda.

As a final matter, the Court feels that it is appropriate to note that defendants apparently continue to maintain that *Enochs v. Williams Packing & Navigation Co.,* 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962), permits this Court to grant plaintiffs the relief they seek *only* if "the Government is without 'any basis' for its substantive position." Defendants' Reply To Plaintiffs' Statement In Response To Court's Direction Of September 6, 1977, at 3. This argument ignores the basis of this Court's decision to deny defendants' motion to dismiss, which is that the Anti-Injunction Act *does not apply* to suits such as the instant one where the aggrieved plaintiffs have no access at all to judicial review. Since the Anti-Injunction Act is inapplicable hereto, the *Williams Packing* exception to the Anti-Injunction Act is also inapplicable to this case, and there is therefore no reason why this Court should not consider plaintiffs' challenge under the "arbitrary and capricious" standard of 5 U.S.C. § 706(2)(A).

In accordance with the foregoing, it is, by the Court this 28th day of September, 1977,

ORDERED, that defendants' motion to dismiss pursuant to the Anti-Injunction Act be, and the same hereby is, denied; and it is

FURTHER ORDERED, that the parties shall have until October 4, 1977, to file any supplemental memoranda on the merits, and until October 7 to file any replies to such supplemental memoranda.

---

1. Cf. *American Society of Travel Agents, Inc. v. Blumenthal*, No. 75–1782 Slip op. (September 15, 1977) (Bazelon, C. J., dissenting opinion) ("The spectre of such unreviewable discretion, especially when, as is alleged in these two cases, it is exercised in contradiction to the commands of Congress, is also discomforting.").