**NATIONAL RESTAURANT ASSOCIA- TION et al., Plaintiffs,**

v.

**William E. SIMON et al., Defendants.**

**Civ. A. No. 76–0095.**

United States District Court, District of Columbia.

March 23, 1976.

994

John D. Conner & Robert L. Ackerly, Washington, D. C., for plaintiffs.

John M. Cunningham & Donald J. Gavin, U. S. Dept. of Justice, Washington, D. C., for defendants.

1. This information appears in box 2 on the W–2.

2. This new information will be reported in box 6 or box 7 of the W–2 form, as the IRS will

MEMORANDUM AND ORDER

BRYANT, District Judge.

This matter is now before the Court on plaintiffs' Motion For Preliminary Injunction, defendants' Motion To Dismiss, and the respective oppositions thereto. For the reasons discussed below, both motions are denied.

■ This case involves a controversy over the proper way in which employers are to complete Internal Revenue Service Form W–2 in the case of those employees who derive part of their wage income from tips received from customers of their employers. In particular, the point at issue concerns tips charged by the customer on some form of charge slip and then paid over by the employer to the employees. Plaintiffs are trade associations representing primarily restaurant operators, many of whose employees receive such "charge-tip" income. Until the present time, employers have been required to include on the W–2 form in the employees' wage figure that amount of tip income reported to the employer by the employee on IRS Form 4070. In general, the figure appearing on the W–2 has therefore represented the total of the tips received as reported by the employee plus the hourly wages paid by the employer.[1] On September 15, 1975 the IRS issued Revenue Ruling 75–400, CCH 1975 Stand.Fed.Tax Rep. ¶ 6869, which requires that employers hereafter keep records of the charge tips paid over to employees, and report—in addition to the wage figure in box 2— the sum of the hourly wages paid, the cash tips reported by the employee on Form 4070, and the amount shown by their records to have been paid to the employee as charge tips. The new figure to be reported will, in other words, indicate any discrepancy between the charge tip component as reported to the employer by the employee and the amount of charge tips the employer has actually paid over to the employee.[2]

shortly determine. When this suit was originally filed, defendants informed the Court that the ruling entailed reporting this figure in box 2, if the figure calculated using the employer's

Plaintiffs claim that this requirement is in direct conflict with parts of the Internal Revenue Code and is also invalid because the Service failed to utilize the appropriate rulemaking procedures of the Administrative Procedure Act. Defendants deny those allegations, and claim that this action should be dismissed because it is barred by the Anti-Injunction Act.

## I. The Anti-Injunction Act

The Anti-Injunction Act, 26 U.S.C. § 7421, prohibits suits to restrain the assessment or collection of any tax. The Court has no question that this is such a suit. The purpose of the revenue ruling is to assist the government in determining the actual tax liability of persons receiving tip income, which it contends is often under-reported. An injunction would therefore have the effect of hampering the proper assessment and collection of taxes rightfully due, within the meaning of the statute.

There is, however, one recognized exception to the bar of the Act: where the government could not ultimately prevail under any circumstances, and if equitable jurisdiction is otherwise present, the bar of the Act is removed. *Enochs v. Williams Packing Co.,* 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1961); *Bob Jones University v. Simon,* 416 U.S. 725, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974); *Alexander v. "Americans United" Inc.,* 416 U.S. 752, 94 S.Ct. 2053, 40 L.Ed.2d 518 (1974). These cases establish that the law and the facts are to be viewed in the light most favorable to the government in making that determination. Where, as here, there are no questions of fact involved, the government will ordinarily prevail if it has a solid, substantial legal argument in support of the challenged action. *Investors Syndicate of America v. Simon,* 407 F.Supp. 83 (D.D.C., 1975). Plaintiffs claim that this exception should apply here. They also ask the Court to find that the Act does not bar this suit because plaintiffs have no adequate alternative forum in which to test the validity of the ruling.

The Supreme Court in *Bob Jones* explicitly left the alternative forum question open, saying that *Bob Jones* was not "a case in which an aggrieved party has no access at all to judicial re-

---

charge-tip payment records exceeded the amount derived using as the charge-tip component the amount reported by the employee on Form 4070. At the hearing held on February 19, 1976 on this motion, all argument was premised on that assumption. The Court pointed out at that time the apparent conflict between the new requirement and the plain language of section 6051(a) of the Internal Revenue Code. Subsequent to the hearing the defendants informed the Court that they were abandoning their prior position, and now represent that the ruling itself merely requires the reporting of the new information on the W–2, and that the choice of which box should contain the new information was simply an administrative decision which, because of the Court's comments on its probable illegality had now been altered so that the contents of box 2 are to remain as they were before the ruling, with the new information now to be required in box 6 or 7, depending on IRS data processing needs. The Court has attempted to determine the accuracy of the defendants' representations as to the meaning of Revenue Ruling 75–400, but has found that it is drafted with such well-crafted obscurity as to conceal its intended meaning from ordinary citizens, with the possible exception of those whose life's work is the interpretation of Internal Revenue regulations. The Court cannot conceive of even the remotest justification for such draftsmanship, particularly in a system already under such heavy criticism for the difficulty involved in discerning and complying with its requirements. However, since the ruling does seem to require the reporting of the new information somewhere on the W–2, the Court proceeds on that assumption. Plaintiffs argue however that the information may not be required even in boxes 6 or 7 of the W–2, because the form's current instructions suggest other possible uses for these boxes. The Court believes that the current instructions on Form W–2 do not preclude the use of those boxes, but is also of the opinion that given the general confusion surrounding the Service's attempt to implement the ruling, considerations of due process would preclude any finding of a violation by an employer unless and until he has received the fair notice represented by at least an IRS Technical Information Release detailing the proper calculation and placement of the new information, and appropriate new placement instructions on the W–2 form itself.

view. Were that true, our conclusion might well be different." 416 U.S. at 746, 94 S.Ct. at 2050, 40 L.Ed.2d at 514. It appears to this Court that the instant case is one in which the operation of the Anti-Injunction Act would mean that the aggrieved party has no access to judicial review, and the Court therefore concludes that the bar of the Act was not intended to apply in such a situation.

The Supreme Court has held that the purpose of the Act is the "protection of the Government's need to assess and collect taxes as expeditiously as possible with a minimum of preenforcement judicial interference, 'and to require that the legal right to the disputed sums be determined in a suit for refund.'" Id., at 736, 94 S.Ct. at 2046, 40 L.Ed.2d at 509.[3] Initial administrative determinations, in other words, are not ordinarily to be reviewed during the assessment process, but rather at the enforcement stage. In the normal case, the enforcement stage means refund litigation: a taxpayer may either pay a disputed sum and sue for a refund, or refuse to pay the sum and defend against a government suit in the Tax Court. Here however plaintiffs are not faced with the usual assessment process, but rather with an administrative determination that existing regulations require them to report certain information about payments to employees. Significantly, no sum of money is at issue in any facet of the requirement, and consequently the ordinary options of refund litigation are not available to plaintiffs. Put another way, there is no enforcement process to which to look for judicial review. While the Supreme Court has held that the delay occasioned by postponing review until refund litigation does not pose constitutional problems, it has nowhere held or implied that such problems could be avoided if a judicial forum was absent altogether.

The government suggests that the penalty provisions of Code section 6652, under which a $1 fine could be imposed upon an employer for each failure to file a required statement with respect to an employee, to be collected like a tax, offer an adequate legal forum in which plaintiffs may contest the validity of the requirement.[4] The Court cannot agree. Under that section the plaintiffs can test the validity of the ruling only by refusing to file the required information, and contesting a possible government assessment of a fine under § 6652. This is obviously not the "refund" action contemplated by the Act. It puts the plaintiffs in the untenable position of either complying, with no judicial review, or of defying the government's interpretation of their legal obligations under the code, of being in essence a lawbreaker. The Court cannot imagine that the Congress intended such an anomalous result in a system which depends for its very existence on the principle of voluntary compliance. Nor does the Court believe that Congress intended to condition access to any judicial review of such a revenue ruling on subjecting oneself to a fine. In order to test the instant ruling, plaintiffs would become liable for a fine for each W–2 they failed to complete properly. This is money not due to government in taxes, but rather is an extra sum the plaintiffs would apparently be required to risk merely to test the validity of a reporting and information requirement. This risk is not found in the ordinary refund litigation procedure. The Court therefore concludes, in light of these considerations and the obvious constitutional problems they may raise, that the Anti-Injunction Act was not intended to, and does not apply in such a situation. The Court will therefore consider the issues on the merits, to determine whether plaintiffs have demonstrated a strong probability

---

3. The Anti-Injunction Act has no recorded legislative history. Id., at 736, 94 S.Ct. at 2045, 40 L.Ed.2d at 509.

4. Plaintiffs argue that for the section to operate, they would have to fail entirely to file a

W–2 for an employee. The Court believes, however, that filing of an incomplete W–2 would activate the provisions of § 6652.

of success as required by *Virginia Petroleum Jobbers Ass'n. v. F. P. C.,* 104 U.S. App.D.C. 106, 259 F.2d 921 (1958).

## II. Internal Revenue Code Provisions

█ Plaintiffs challenge the ruling as in conflict with Code Sections 6051 and 6053. Defendants contend these sections are unrelated to § 6041, upon which the Service premises its ruling. Defendant argues that Section 6041 empowers the Service to require employers to record and report on the W–2 form amounts paid over to employees on the basis of tips appearing on charge slips. All three sections involved are in the "Information Returns" part (III) of the "Returns and Records" Subchapter (A) of the Code's Chapter 61, "Information and Returns". Section 6041 generally authorizes the Service to require persons in a trade or business to report to it amounts paid to another person as salaries, wages, compensation, remuneration, and the like. It also authorizes the Service to specify the form and manner of that reporting. The IRS regulations generally provide for the use of the W–2 as the information return to be filed with regard to payments to employees. Treas.Reg. §§ 1.6041–1(a)(2), 1.6041–2(a)(1), 1.6041–2(a)(3). Section 6053, enacted as part of the Social Security Amendments of 1965, P.L. 89–97, requires employees who receive tips in the course of their employment to report those tips monthly to their employers. Form 4070 is prescribed by the IRS for this report, and contains separate blanks for the reporting of cash-tip and charge-tip income. Section 6051(a) requires employers to make a yearly report, by the 31st of January following the income year, to each employee of that employee's wages for the income year. § 6051(a)(3). Those wages ordinarily include hourly wages and tips. The section also provides: "In the case of tips received by an employee in the course of his employment, the amounts required to be shown by paragraphs (3) and (5) shall include only such tips as are included in statements furnished to the employer pursuant to section 6053(a)." The Service has prescribed the W–2 form as the reporting method under this section. Treas. Reg. § 31.6051–2(a). This wage information is to be placed in box 2 of the W–2 form. The government concedes that only those tips reported by employees pursuant to § 6053 are to be included by the employer in box 2 of the W–2 prepared in compliance with § 6051.

The plaintiffs argue further that the legislative history of Sections 6051 and 6053 indicates that Congress intended to wholly preclude the IRS from requiring the information now sought. A review of that legislative history, see, H.Rep.No. 213, 89th Cong., 1st Sess., on H.R. 6675 (1965), shows that the concern of the Congress in the consideration of tip income in the Social Security Act Amendments of 1965 was to extend social security benefits and coverage to tip income:

> The problem of extending social security coverage to tips has engaged the attention of your committee for many years. The principal difficulty has been to devise a fair and practical system for obtaining information on amounts of tips received by an individual which could serve as a basis for contributions and benefit credits. Another problem has been the question of whether tips should be taxed as wages or as self-employment income.

*Id.,* at p. 96. As plaintiffs argue, it is also clear from the legislative history of the 1965 amendments that Congress intended that in fulfilling their new obligation with respect to social security and income tax withholding, employers in businesses like those of plaintiffs should not be burdened with the role of watchdogs over their employees. This intention arose from a recognition that cash tips would be impossible for employers to keep track of and that many employees in such establishments use various kinds of tip pooling and tip splitting arrangements to allocate tips among waiters and waitresses, bus-people, wine stewards, and so forth. Usually the employer has no control or specific knowledge of the details of the arrangements.

Amounts paid over to employees from charge slips therefore do not necessarily represent income to the employees to whom they are paid; like cash tips, they may be pooled or split. The government acknowledges this fact, and Congress was careful to recognize for the purposes of the amendments that "where employees practice tip-splitting, the ultimate recipient of the tip (or portion thereof) is the employee who is receiving the tips as wages." *Id.*, at p. 218. But there is no indication that Congress intended in Sections 6051 and 6053 to limit the authority granted by any other section not related to the withholding and social security provisions it was enacting. And the language of § 6051(a) itself refers only to the amounts to be reported to *employees* under that section. The Court therefore concludes that § 6051 does not limit the government's authority otherwise granted by § 6041.

There remains to be determined whether Section 6041(a) authorizes the IRS to require the reporting of this information. Plaintiffs' argument is that charge tips paid over to employees are not wages within the meaning of the statute since (a) the employer is merely a conduit from the customer to the employee; (b) the intent of Congress in passing the 1965 amendments to Section 6051 was to make clear that such payments do not constitute wages, because the payee may not be the ultimate recipient; and (c) on the merits, the prevalence of tip-splitting arrangements removes such payments from coverage as wages, since the payee is often not the ultimate recipient of the income.

The Court is not persuaded by these arguments. The purpose of Section 6041(a) is to allow the government to determine what taxes are owed by persons receiving payments constituting, *inter alia,* wage income, by requiring the persons making these payments to report them to the IRS. Here the Service has determined that such information is required to combat the problem of tip under-reporting. The problem is a well-known one, and one with which the section is intended to deal. The fact that the payment made by the employer is derived from a charge-tip does not alter its status as a "payment" of "wages" made "in the course of business". The purpose of the statute is to help the government keep track of payments, the receipt of which may constitute income to the recipient. There is nothing inherent in that purpose which mandates that the payment be by the original source of the money, or that intermediate transferors may not be required to report the transfers to which they are parties.

The Court also does not believe that the existence of tip-splitting arrangements invalidates the requirements of the revenue ruling. The IRS acknowledges the practice, and does not suggest that all payments represent income to the person first receiving them. It contends, rather, that there is no reason to read the section to preclude requiring information on such payments, as on such similar payments as commissions. The Court agrees. While it is true that some portion of some of these payments may not constitute wages to the initial recipient, it is also true that at least some portion of each of the payments will constitute income to the recipient. This, the Court believes, is sufficient to justify the use of the statute in this situation.[5] Finally, for the reasons stated earlier, the Court does not believe that Congress intended to affect the § 6041 authority when it stated in reference to the 1965 amendments that these payments constituted wages only for the ultimate recipient. *Id.*, at p. 218. The Congress was concerned there with es-

---

5. The mere fact that the payments are reported to the IRS by the employer does not, of course, automatically make the amount part of the employee's taxable income; his or her own W–2 form will still reflect, in box 2, the year's wages calculated on the basis of his or her § 6053 statements. The fact that the employee may have to explain the discrepancy to the IRS does not distinguish this situation from a number of others where an audited taxpayer is called upon to answer questions for the Service.

tablishing the amount to be used as an income tax withholding and social security basis, and the mechanism it established to accomplish that (§ 6053) was not intended to limit other pre-existing authority such as § 6041.

### III. The Administrative Procedure Act

■ Plaintiffs contend that Revenue Ruling 75–400 is invalid for the failure of the IRS to comply with the rulemaking requirements of 5 U.S.C. § 552. Defendants reply that this is either an action committed by law to agency discretion, and thus non-reviewable, 5 U.S.C. § 701(a)(2), or merely an "interpretative" rule, exempted by § 553(b)(A) from the normal rulemaking requirements.

This matter is clearly not one committed by law to agency discretion, as evidenced by defendants' inability to cite any analogous cases establishing non-reviewability in such a situation. The statutory exemption has consistently been held to be a narrow one, *see,* e. g., *Associated Electric Co-op, Inc. v. Morton,* 165 U.S.App.D.C. 344, 507 F.2d 1167 (1974). Here the language of Section 6041 of the Code does not support such a reading. Furthermore, the Service is here elucidating a new record-keeping and reporting requirement, reflecting the obligations of a substantial number of employers and affecting also the relations of many employees with the government's taxing agency. This is not a matter such as the design of reporting forms or the timing of filing such forms. Actions such as those are the ones here committed by law to agency discretion. Certain matters of mere accounting practice may be committed by law to agency discretion. The matters in question here, however, are not so committed, are not matters of mere administrative detail, and are reviewable by the courts.

The Court believes however, that the revenue ruling does represent an "interpretative" rule, exempt from the rulemaking requirements of § 553. The leading cases in this circuit, *Gibson Wine Co. v. Snyder,* 90 U.S.App.D.C. 135, 194 F.2d 329 (1952), and *Pickus v. United States Board of Parole,* 165 U.S.App.D.C. 284, 507 F.2d 1107 (1974), indicate that an interpretative rule is one which merely explains the meaning of particular terms in the statute, and does not substantially affect the rights of those over whom the agency exercises authority. "[I]nterpretative rules consist of administrative construction of a statutory provision on a question of law reviewable in the courts. * * * Treasury Regulations interpreting the Internal Revenue Code are a prime example." *Pickus v. United States Board of Parole,* 507 F.2d at 1113. Here the revenue ruling simply interprets Section 6041 and Treas.Reg. § 1.6041–2(a)(1). It clarifies the employers' obligation to report a particular kind of "compensation" payment—charge tips—under the existing regulations. While it does in fact impose a reporting requirement not heretofore present, it does so by interpreting the meaning of already binding regulations, rather than by creating any new obligations. In the Court's view, it is a ruling of the sort that Congress intended the Secretary to make as a matter of administrative construction, not subject to the normal rulemaking requirements. *Compare, National Motor Freight Traffic Ass'n. v. United States,* 268 F.Supp. 90 (D.D.C., 1967), aff'd *per curiam* 393 U.S. 18, 89 S.Ct. 49, 21 L.Ed.2d 19 (1968).

It is therefore by the Court this 19th day of March, 1976,

ORDERED, that plaintiffs' Motion For Preliminary Injunction be, and hereby is, denied; and

ORDERED FURTHER, that defendants' Motion To Dismiss be, and hereby is, denied.