457 F.Supp. 1309 (1978)
The STATE OF CALIFORNIA By and Through Evelle J. YOUNGER, Attorney General of the State of California, Plaintiff,
v.
The Honorable W. Michael BLUMENTHAL, Secretary of the Treasury of the United States, Defendant.
Civ. No. S-78-356-TJM.
United States District Court, E. D. California.
October 3, 1978.
*1310 William J. Power, Deputy Atty. Gen., Sacramento, Cal., for plaintiff.
Solomon Robinson, Asst. U. S. Atty., Sacramento, Cal., Richard A. Scully, U. S. Dept. of Justice, Washington, D. C., for defendant.

MEMORANDUM OF OPINION DENYING PLAINTIFF'S MOTION FOR DECLARATORY RELIEF AND DISMISSING THE COMPLAINT
WILLIAM W SCHWARZER, District Judge.
Plaintiff filed this action on July 10, 1978, seeking broad declaratory and injunctive relief against the application of the Employee Retirement Income Security Act of 1974 ("ERISA"), 88 Stat. 829, 29 U.S.C. § 1001 et seq., to pension and retirement plans maintained by the State of California *1311 or any of its agencies. Plaintiff asserts that Congress did not intend the Act to apply to governmental plans, and that even if Congress intended otherwise, its application to such plans would violate the tenth amendment. ERISA requires, among other things, the filing of an annual information return by every employer maintaining a pension plan described in part I of subchapter D of chapter 1 of the Internal Revenue Code, 26 U.S.C. § 401 et seq.[1] An unexcused failure to file may result in penalties of $10 for each day during which the failure continues up to a maximum of $5,000. 26 U.S.C. § 6652(f).
Plaintiff has moved for a preliminary injunction to prevent defendant "from imposing . . . or threatening to impose a fine upon plaintiff . . . for plaintiff's refusal to file with defendant the return mentioned in Section 6058 . . ." Defendant takes the position that the declaratory and injunctive relief sought by plaintiff is prohibited by the federal tax exception of the Declaratory Judgments Act, 28 U.S.C. §§ 2201-2202, and by the Anti-Injunction Act, 26 U.S.C. § 7421(a). Even if those statutory prohibitions were inapplicable, defendant contends, plaintiff has failed to establish that it is threatened with irreparable harm, a prerequisite to the granting of equitable relief, and on the merits is not entitled to declaratory relief.

I

Case or Controversy
The documents filed in support of plaintiff's motion show that beginning about April, 1977, the Internal Revenue Service ("IRS") issued a series of News Releases announcing that governmental units maintaining employee pension benefit plans must file annual returns with the IRS pursuant to Code Section 6058(a), regardless of whether there has been a determination that the plans are qualified. In subsequent releases, the IRS reduced the amount of information required of governmental plans and extended the filing date. Under regulations promulgated by the IRS and published on July 7, 1978, 43 Fed.Reg. 29291, returns for the years 1975-1977 are to be filed by September 1, 1978, and penalties waived for all returns filed by that date. The reporting requirements for governmental plans were limited to items one through seven, nine, ten (a)-(d), eleven and seventeen of Form 5500.
The parties agree that there is a present controversy over defendant's authority to require plaintiff and its agencies to file annual information returns with respect to employee pension plans maintained by them. While plaintiff's request for preliminary injunctive relief is directed primarily at the imposition of penalties, it does not appear necessary to reach that issue. No penalties having been imposed, that issue is not ripe for decision. Instead, the Court will treat plaintiff's motion as one for declaratory relief directed to defendant's power to require plaintiff to file annual information returns pursuant to Code Section 6058(a).[2] With respect to that requirement, *1312 the Court finds that a justiciable controversy exists over which the Court has jurisdiction to grant declaratory relief, 28 U.S.C. §§ 1331(a), 1340, 2201; Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937); Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941), unless barred by the federal tax exception of the Declaratory Judgments Act.[3]
None of the other issues raised in the complaint presents a justiciable case or controversy. Plaintiff argues that the threat of future taxation, with the possibility of retroactive application, creates a present controversy under Lake Carriers' Assn. v. MacMullan, 406 U.S. 498, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972). Even assuming the argument to have merit, it proves too much. If the threat of taxation created a controversy, that controversy, unlike that over the required filing of information returns, would clearly be one with respect to the assessment and imposition of federal taxes and subject to the usual assessment and refund procedures. Thus, the case would fall within the tax exception of the Declaratory Judgments Act and would also be barred by the Anti-Injunction Act. All claims except those related to the Section 6058(a) filing requirement must therefore be dismissed without prejudice for lack of jurisdiction.

II

Applicability of the Federal Tax Exception of the Declaratory Judgments Act
By amendment adopted in 1935,[4] Congress excluded controversies "with respect to Federal taxes" from the scope of the Declaratory Judgments Act of 1934.[5] The Court must therefore determine whether the controversy over the requirement under Code Section 6058(a) that annual information returns be filed is a controversy with respect to federal taxes.
The information called for by Form 5500 is general rather than financial in nature. The filing requirement is a part of a broad federal scheme of pension plan reform incorporated in ERISA. The legislative history of ERISA indicates that one purpose of requiring employers to file annual information returns, which are open to public inspection, was to enable plan participants and beneficiaries to obtain information needed to enforce their plan rights and to oversee the obligations owed by fiduciaries to the plans generally.[6] Another purpose mentioned in the history, and stressed by defendant, is to provide the IRS with annual statistical data for its evaluation and to provide information to the Department of Labor.[7] Whatever the primary purpose of the requirement, however, the statutory authority for it is found in the Internal Revenue Code. See, Bob Jones University v. Simon, 416 U.S. 725, 740, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974). The information return *1313 moreover, provides the IRS with information which will assist it in keeping track of governmental plans and determining the taxability of benefits paid and income incurred by governmental plans. Lewis v. Sandler, 498 F.2d 395, 399 (4th Cir. 1974). An order relieving plaintiff from having to file Form 5500 would to some extent hamper the Government's ability to assess and collect taxes, and to protect its revenue in general. It follows that plaintiff's claim for declaratory relief would be barred by the federal tax exception of the Declaratory Judgments Act unless special circumstances make it inapplicable.
No taxes or penalties have been assessed against plaintiff nor is assessment imminent or threatened. Plaintiff is therefore subject to the reporting requirement, without having access to any assessment and refund procedures in which the requirement can be challenged.
The question whether the Anti-Injunction[8] and Declaratory Judgment Acts will bar relief in a tax controversy when the plaintiff has no adequate alternative forum in which to challenge the validity of IRS action was explicitly left open in Bob Jones, above, 416 U.S. at 746 and 747, n. 21, 94 S.Ct. 2038. The Court of Appeals relied upon this exception in Eastern Kentucky Welfare Rights Org. v. Simon, 165 U.S.App. D.C. 239, 506 F.2d 1278 (1974), vacated, 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1975) (on the ground that plaintiffs failed to establish their standing to sue, without reaching the question whether the action was barred by the Declaratory Judgments or Anti-Injunction Acts). The district court had granted summary judgment to plaintiffs (various health and welfare organizations and indigent persons), holding that private nonprofit hospitals seeking tax exempt status as charitable organizations must provide free or low cost treatment to individuals unable to pay for such services, and invalidating the revenue ruling which modified that requirement. Defendant-appellant argued that the district court lacked jurisdiction because the action was barred by the Anti-Injunction Act and by the tax exception of the Declaratory Judgments Act. The Court of Appeals held, however, that the action was not barred since plaintiffs were seeking to force the Government to impose a tax on the contributors to certain hospitals, not to prevent assessment of a tax, and had no other adequate legal remedy.[9]
Defendant argues that because plaintiff may refuse to file Form 5500, incur a penalty under Code Section 6652, and then contest *1314 payment of that penalty, plaintiff has an adequate legal remedy. That argument was rejected by Judge Bryant in National Restaurant Ass'n v. Simon, 411 F.Supp. 993 (D.D.C.1976), where a group of trade associations sought to enjoin the IRS from implementing a ruling requiring employers to include on the employee's W-2 form the amount shown by the employer's records to have been paid to the employee in charge tips. Plaintiffs claimed that the requirement conflicted with other provisions of the Internal Revenue Code and that the IRS failed to follow proper rule-making procedures. Defendants moved to dismiss on the ground the action was barred by the Anti-Injunction Act. The court decided that the action was within the Anti-Injunction Act but that because it would have left the aggrieved party without access to judicial review, the Act was not intended to apply to such a situation. Noting that under the Anti-Injunction Act, initial IRS determinations are ordinarily not reviewable until the enforcement stage, the court explained:
In the normal case, the enforcement stage means refund litigation: a taxpayer may either pay a disputed sum and sue for a refund, or refuse to pay the sum and defend against a government suit in the Tax Court. Here however plaintiffs are not faced with the usual assessment process, but rather with an administrative determination that existing regulations require them to report certain information about payments to employees. Significantly, no sum of money is at issue in any facet of the requirement, and consequently the ordinary options of refund litigation are not available to plaintiffs. Put another way, there is no enforcement process to which to look for judicial review. While the Supreme Court has held that the delay occasioned by postponing review until refund litigation does not pose constitutional problems, it has nowhere held or implied that such problems could be avoided if a judicial forum was absent altogether.
(411 F.Supp. at 996)
The court then rejected the Government's suggestion that the penalty provisions of Code Section 6652 afforded plaintiffs an adequate legal forum in which to contest the validity of the reporting requirement:
It puts the plaintiffs in the untenable position of either complying, with no judicial review, or of defying the government's interpretation of their legal obligations under the code, of being in essence a lawbreaker. The Court cannot imagine that the Congress intended such an anomalous result in a system which depends for its very existence on the principle of voluntary compliance. Nor does the Court believe that Congress intended to condition access to any judicial review of such a revenue ruling on subjecting oneself to a fine. In order to test the instant ruling, plaintiffs would become liable for a fine for each W-2 they failed to complete properly. This is money not due to government in taxes, but rather is an extra sum the plaintiffs would apparently be required to risk merely to test the validity of a reporting and information requirement. This risk is not found in the ordinary refund litigation procedure. The Court therefore concludes, in light of these considerations and the obvious constitutional problems they may raise, that the Anti-Injunction Act was not intended to, and does not apply in such a situation.
(Id.)
Defendant argues that even if plaintiff's claim, under National Restaurant Ass'n, is not barred by the Anti-Injunction Act, it is barred by the allegedly broader federal tax exception of the Declaratory Judgments Act. The question whether the Declaratory Judgments Act is more preclusive than the Anti-Injunction Act was raised, but left unanswered in Bob Jones and Alexander, Commissioner of Internal Revenue v. "Americans United" Inc., 416 U.S. 752, 94 S.Ct. 2053, 40 L.Ed.2d 518 (1974).[10] For purposes of this decision, it is *1315 *1316 necessary only to hold that the lack of an adequate alternative forum exception, raised in Bob Jones and adopted in National Restaurant Ass'n, should apply to claims for declaratory relief as it does to claims for injunctive relief, no reason appearing for making a distinction.[11]

III

The Interpretation of Section 6058(a)
On the face of it Section 6058(a) appears to be applicable to plaintiff. Section 6058(a) by its terms is applicable where the employer maintains a funded plan described in part I of subchapter D of chapter 1 of the Internal Revenue Code (Code Section 414(d)) which includes a "governmental plan."[12] The definition of employer provided in subsection (c) of Section 6058 neither excludes nor includes government employers expressly.[13] Plaintiff, of course, is an employer in the sense that it has employees; it maintains several funded plans of deferred compensation described in part I of subchapter D of chapter 1 as governmental plans; and neither plaintiff nor its plans are expressly exempted from subsection (a) although their plans are expressly exempted from other ERISA provisions.
Reference to the preceding Section 6057, which requires the filing of registration statements (as opposed to information returns) discloses that that requirement is imposed only with respect to plans to which the vesting requirements of ERISA apply. Governmental plans are specifically exempted from those requirements. 29 U.S.C. §§ 1002(32), 1003(b)(1), 1051, 26 U.S.C. § 411(e). Thus, Congress spoke directly when it meant to exclude governmental plans from the scope of any of the ERISA requirements, a conclusion which is confirmed generally by the coverage provisions of 29 U.S.C. §§ 1081 and 1101, expressly exempting governmental plans from various other ERISA requirements by reference to the Section 1003(b)(1) exemption.[14]
*1317 If, as plaintiff contends, Congress intended to exclude governmental plans from the Act entirely, Congress could easily have provided a blanket exclusion. Instead it provided specific, limited exemptions from certain ERISA requirements, none of which apply to Section 6058(a). The failure to provide an exclusion or exemption under that section compels the conclusion that Congress intended the Section 6058(a) reporting requirement to apply to employers maintaining governmental plans, i. e. government employers.
Nor is there any basis for limiting the applicability of Section 6058(a) to employers maintaining qualified plans. The section refers to plans described in part I of subchapter D of chapter 1 of the Internal Revenue Code. That part describes nonqualified as well as qualified plans. The scope of ERISA itself is, of course, not limited to qualified plans  its remedial provisions are intended to reach deferred compensation plans generally. See, e. g. 29 U.S.C. § 1002(1) and (2). Again, when Congress chose to limit the application of a provision to qualified plans, it did so expressly. See, e. g. 26 U.S.C. §§ 219(b)(2)(A)(i) and 401(a). Therefore, the fact that plaintiff's plans may be nonqualified does not exclude the plans from the scope of Section 6058(a).
Counsel for plaintiff has directed the Court's attention to Code Section 6058(b) which provides that:
Not less than 30 days before a merger, consolidation, or transfer of assets or liabilities of a plan described in subsection (a) to another plan, the plan administrator (within the meaning of section 414(g)) shall file an actuarial statement of valuation evidencing compliance with the requirements of section 401(a)(12).
It is urged that reference to Code Section 401(a)(12), the final paragraph of Section 401(a) following subsection (21), and Section 411(e) demonstrates that the reporting requirement imposed by subsection (b) in the event of a merger is inapplicable to governmental plans because Section 401(a)(12) applies only to plans to which the vesting standards of Section 411 apply, and the provisions of Section 411, other than Section 411(e)(2), do not apply to governmental plans. Therefore, says plaintiff, if subsection (b) does not apply, the distinct reporting requirement of subsection (a), which is imposed annually regardless of whether or not a merger has occurred, likewise does not apply to governmental plans.
While plaintiff's argument raises an interesting but abstract question whether Section 6058(b) may validly impose a requirement of compliance with Section 401(a)(12) on plans otherwise not subject to that requirement, it does not establish that governmental plans must be excluded from Section 6058(a). The reference in subsection (b) to plans described in subsection (a) does not compel the conclusion that if governmental plans must, for the sake of consistency, be exempted from subsection (b), they must also be exempted from subsection (a). Moreover, since the reporting requirement imposed by subsection (a), as opposed to subsection (b), does not appear to be inconsistent with any other provision of ERISA, the Court sees no reason to alter its conclusion that Congress did not intend to exempt government employers from the reporting requirement imposed by Section 6058(a).

IV

The Impact of the Tenth Amendment
The tenth amendment to the Constitution reserves to the States the powers not delegated to the United States nor prohibited to the States. In its most recent decision in this area, the Supreme Court held that among the powers reserved to the States as sovereign entities is the power to determine the compensation of persons employed to carry out the States' governmental functions. National League of Cities v. Usery, 426 U.S. 833, 845, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976). The Court held this power to be essential to the "separate and independent existence" of the States, and hence one with respect to which Congress may not abrogate the States' plenary authority. 426 U.S. at 851-852, 96 S.Ct. at 2474.
The instant case is a far cry from one involving "fundamental employment decisions upon which [the States'] systems for *1318 performance of [their governmental] functions must rest . . ." 426 U.S. at 851, 96 S.Ct. at 2474. All that is before the Court is the validity of the requirement that plaintiff file annual information returns. Defendant has not sought to impose any requirements which would affect plaintiff's management or operation of its pension plans. Unlike in National League of Cities, application of the Section 6058(a) reporting requirement to the States will not withdraw from them the authority to make any fundamental employment decision, nor will it limit the States' ability to structure employer-employee relationships.
Section 6058(a) merely requires every employer (including government employers) maintaining a funded plan of deferred compensation to file an annual information return. Examination of the Form 5500 items which plaintiff would be required to complete discloses that they call for information which plan administrators are likely to have at hand and thus can readily furnish. Plaintiff has made no showing that completion of those few items would be either unduly burdensome or impractical.
Plaintiff cites no authority, and the Court is aware of none, which precludes the federal government from requiring state governments and agencies to file information returns in their capacity as employers. Apparently, the various States and their agencies have for years complied without challenge with the employment tax provisions of the Internal Revenue Code, involving withholding and reporting. 26 U.S.C. § 3404. The instant requirement is no more intrusive. Furthermore, that the federal income tax laws, when applied to the income of State employees, may have an adverse impact on the States in the discharge of their governmental functions is no ground for invoking the tenth amendment. Helvering v. Gerhardt, 304 U.S. 405, 58 S.Ct. 969, 82 L.Ed. 1427 (1938). See also Wilmette Park District v. Campbell, 172 F.2d 885 (7th Cir. 1949), aff'd, 338 U.S. 411, 70 S.Ct. 195, 94 L.Ed. 205 (1949). That compliance with Section 6058(a) will increase to some extent the expense of state operations does not make the requirement violative of the Constitution.
Such burdens are but normal incidents of the organization within the same territory of two governments, each possessed of the taxing power.
(Helvering, above, 304 U.S. at 422, 58 S.Ct. at 976)
The Court concludes that plaintiff's constitutional objections to the filing of Form 5500 are without merit.
Plaintiff is faced with no action, or threatened action, by defendant other than the imposition of a lawful reporting requirement. Accordingly, insofar as plaintiff seeks declaratory relief against the application of Section 6058(a) to its plans, the motion is denied on the merits. In all other respects, the complaint is dismissed for lack of jurisdiction.
IT IS SO ORDERED.
NOTES
[1] This requirement is found in Section 6058 of the Code which provides, in relevant part:

(a) In general.Every employer who maintains a pension, annuity, stock bonus, profit-sharing, or other funded plan of deferred compensation described in part I of subchapter D of chapter 1, or the plan administrator (within the meaning of section 414(g)) of the plan, shall file an annual return stating such information as the Secretary may by regulations prescribe with respect to the qualification, financial condition, and operations of the plan; except that, in the discretion of the Secretary, the employer may be relieved from stating in its return any information which is reported in other returns.
* * * * * *
(c) Employer.For purposes of this section, the term "employer" includes a person described in section 401(c)(4) and an individual who establishes an individual retirement account or annuity described in section 408. 26 U.S.C. § 6058.
[2] It is, of course, also unnecessary to reach other issues concerning the power of the federal government to regulate or control pension plans maintained by states or their agencies. Those issues are not ripe for decision in this litigation inasmuch as defendant has acted, or threatened to act, only with respect to the filing of annual information returns. Nor need the Court be concerned with potential burdens on plaintiff should defendant require the filing of returns more elaborate and burdensome than those currently required.
[3] Defendant contended initially that he had not been properly served. The file now indicates, however, that defendant was served by certified mail and that, in addition, the United States Attorney in Sacramento was personally served. Thus, service appears to have been sufficient. 28 U.S.C. § 1391(e); F.R.Civ.P. Rule 4(d)(4), (5).
[4] Amendment of August 30, 1935, 49 Stat. 1027.
[5] The Act of June 14, 1934, 48 Stat. 955, 28 U.S.C. §§ 2201-2202 provides:

§ 2201. Creation of remedy
In a case of actual controversy within its jurisdiction, except with respect to Federal taxes, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.
§ 2202. Further relief
Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.
[6] 1974 U.S.Code Cong. & Admin.News, p. 4639, at 4827.
[7] Id. at 4919.
[8] The Act of Mar. 2, 1867, § 10; 14 Stat. 475; Rev.Stat. § 3224 (1874); Int.Rev.Code of 1939, § 3653. Section 7421(a) of the Internal Revenue Code of 1954 states:

Except as provided in sections 6212(a) and (c), 6213(a), and 7426(a) and (b)(1), no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.
In Bob Jones University v. Simon, 416 U.S. 725, 733, n. 7, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974) and in Alexander, Commissioner of Internal Revenue v. "Americans United" Inc., 416 U.S. 752, 759, n. 10, 94 S.Ct. 2053, 40 L.Ed.2d 518 (1974), the Supreme Court held the federal tax exception of the Declaratory Judgments Act to be at least as broad as the Anti-Injunction Act. Thus, any claim for relief falling within the prohibition of the Anti-Injunction Act is also within the tax exception to the Declaratory Judgments Act. (See note 10, below)
[9] The court reasoned that obviously neither the tax exempt charitable hospitals nor their contributors would institute refund litigation because the contributions were tax-free. 506 F.2d at 1284.

The court also relied on McGlotten v. Connally, 338 F.Supp. 448 (D.D.C.1972) (three-judge court), a case in which the district court rejected the defendant's contention that the Anti-Injunction Act barred a non-taxpayer from challenging the exempt status of a fraternal organization with racially discriminatory membership policies. In McGlotten the court stated:
Plaintiff's action has nothing to do with the collection or assessment of taxes. . . . The preferred course of raising his objections in a suit for refund is not available. In this situation we cannot read the statute to bar the present suit. (338 F.Supp. at 453-454)
See also Investment Annuity, Inc. v. Blumenthal, 437 F.Supp. 1095, 1099-1101, and Supplementary Order at 1103 (D.D.C.1977), where the court relied on the no access to judicial review exception raised by the Supreme Court in Bob Jones and held that the Anti-Injunction Act was not intended to preclude pre-enforcement review of Service action when the action will otherwise never be subject to judicial review.
[10] There the Supreme Court stated:

"Some have noted that the federal tax exception to the Declaratory Judgment Act may be more sweeping than the Anti-Injunction Act. E. g., E. Borchard, Declaratory Judgments 855 (2d ed. 1941); Bittker & Kaufman, . . [Taxes and Civil Rights: `Constitutionalizing' the Internal Revenue Code 82 Yale L.J. 51 (1972)] at 58. See S.Rep. No. 1240, 74th Cong., 1st Sess., 11 (1935). The Service takes that position in this case . . .. There is no dispute, however, that the federal tax exception to the Declaratory Judgment Act is at least as broad as the Anti-Injunction Act. Because we hold that the instant case is barred by the latter provision, there is no occasion to resolve whether the former is even more preclusive."
(Bob Jones, above, 416 U.S. at 733, 94 S.Ct. at 2044)
* * * * * *
"The Court of Appeals also held that the scope of the `except with respect to Federal taxes' clause of the Declaratory Judgment Act, see n. 8, supra, is coterminous with the Anti-Injunction Act ban against suits `for the purpose of restraining the assessment or collection of any tax' despite the broader phrasing of the former provision. ["Americans United" Inc. v. Walters], 155 U.S.App.D.C. 284, 291, 477 F.2d 1169, 1176. While we take no position on this issue, it is in any event clear that the federal tax exception to the Declaratory Judgment Act is at least as broad as the prohibition of the Anti-Injunction Act. Because we hold that the latter Act bars the instant suit, there is no occasion to deal separately with the former."
(Americans United, above, 416 U.S. at 759, 94 S.Ct. at 2058)
Prior to the Bob Jones and Americans United cases, a number of courts construed the federal tax exception of the Declaratory Judgments Act and the Anti-Injunction Act as having coterminous application. See, e. g., Tomlinson v. Smith, 128 F.2d 808, 811 (7th Cir. 1942); McGlotten v. Connally, 338 F.Supp. 448, 452-453 (D.D.C.1972) (three-judge court); and Jules Hairstylists of Maryland, Inc. v. United States, 268 F.Supp. 511, 515 (D.Md.1967), aff'd, 389 F.2d 389 (4th Cir.), cert. denied 391 U.S. 934, 88 S.Ct. 1847, 20 L.Ed.2d 1854 (1968). Since the Bob Jones and Americans United decisions the D.C. Circuit has held, as it did in Americans United, that Congress intended the two statutes to be coterminous. Eastern Kentucky Welfare Rights Org. v. Simon, 165 U.S.App.D.C. 239, 244-247, 506 F.2d 1278, 1283-1286 (1974), vacated, 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976). The court based its conclusion upon a re-examination of the legislative history of the 1935 Amendment to the Declaratory Judgments Act found in S.Rep. No. 1240, 74th Cong., 1st Sess. 11 (1935):
Your committee has added an amendment making it clear that the Federal Declaratory Judgments Act of June 14, 1934, has no application to Federal taxes. The application of the Declaratory Judgments Act to taxes would constitute a radical departure from the long-continued policy of Congress (as expressed in Rev.Stat. 3224 [the Anti-Injunction Act, as formerly numbered] and other provisions) with respect to the determination, assessment, and collection of Federal taxes. Your committee believes that the orderly and prompt determination and collection of Federal taxes should not be interfered with by a procedure designed to facilitate the settlement of private controversies and that existing procedure both in the Board of Tax Appeals and the courts affords ample remedies for the correction of tax errors.
To the same effect, see H.Rep. No. 1885, 74th Cong., 1st Sess. 13 (1935).
The Court of Appeals' conclusion may be further supported by the observations of Professor Borchard, Co-Draftsman of the Federal Declaratory Judgments Act. He questioned the necessity and purpose of the amendment and advocated a coterminous construction:
While no precise place for declaratory relief in the scheme of federal tax procedure had been worked out when the Federal Declaratory Judgments Act was adopted in 1934, it was an error for Assistant Attorney General Wideman to suggest to the Senate Committee on Finance in 1935 that Congress intended to apply the Act to matters of private law and that tax matters were intended to be excluded. A simple reading of the Senate Report on the Declaratory Judgments Act and an examination of the first edition of this book should have refuted so unfounded an assumption. But the Department of Justice moved the Congress, without participation in the regular hearings and without opportunity for opponents to be heard, to amend the Federal Declaratory Judgments Act so as to exclude from its scope all actions involving `federal taxes.' . . ..
But the Government's argument for the amendment of 1935, while suggesting that the declaration was a circumvention of Section 3224 in the matter of income tax assessment, goes much beyond the reason advanced in its support and denies the possibility of challenging federal taxes of any kind on any ground by declaratory action. On its face, it might seem that while injunction may still be granted within numerous exceptions to Section 3224, the milder declaration could not be granted. This would be anomalous. A sounder view would make the prohibition of declaratory judgments in tax cases cover precisely the ground reserved against injunction by Section 3224 and no more, thus merely preventing the use of the declaratory judgment to escape the now limited restrictions of Section 3224. Even this is pretty harsh, since the need for equitable relief is a condition of injunction but not necessarily of a declaratory judgment. But at least such a construction would limit the destructive and anti-social effects of the Amendment of 1935. (footnotes omitted, emphasis supplied) (E. Borchard, Declaratory Judgments 850, 855 (2d ed. 1941))
[11] Indeed a stronger argument can be made for applying the exception to permit claims for declaratory relief. Generally speaking, existence of an adequate alternative legal remedy precludes the granting of equitable relief; it would not, however, preclude the granting of declaratory relief. 28 U.S.C. §§ 2201-2202, Fed.R.Civ.P. 57; Pacific Indemnity Co. v. McDonald, 107 F.2d 446, 448 (9th Cir. 1939).

The Court is aware of Crouch v. C. I. R., 447 F.Supp. 385 (N.D.Cal.1978), where the plaintiff tax preparer sought relief against compelled disclosure of his Social Security number on the ground that it violated his constitutional privacy interests. From what appears in the opinion in that case, plaintiff sought only to enjoin the IRS from enforcing the Section 6695(c) penalty provision and did not seek declaratory relief as to the statutory and constitutional validity of the underlying disclosure requirement found in Section 6109(a)(4) of the Code. The court held that in light of Code Section 6671, the penalty imposed by Section 6695(c) is a tax within the meaning of the Anti-Injunction Act. Without discussing the National Restaurant Ass'n case or the adequate alternative forum exception, the court dismissed the action on the ground it was barred by the Anti-Injunction Act.
The case appears to be distinguishable. Here the Court has already dismissed, for lack of jurisdiction, plaintiffs claim for injunctive relief against imposition of a penalty under Code Section 6652. Unlike plaintiff in Crouch, plaintiff here seeks declaratory relief with respect to the underlying but separate reporting requirement of Code Section 6058(a) (violation of which may trigger a Section 6652 penalty).
[12] Governmental plan.  For purposes of this part, the term `governmental plan' means a plan established and maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing. The term `governmental plan' also includes any plan to which the Railroad Retirement Act of 1935 or 1937 applies and which is financed by contributions required under that Act and any plan of an international organization which is exempt from taxation by reason of the International Organizations Immunities Act (59 Stat. 669). 26 U.S.C. § 414(d).
[13] See note 1, above.
[14] Review of the legislative history, 1974 U.S. Code Cong. & Admin.News, pp. 4639-5190 and S.Rep. No. 1090, 93d Cong., 2d Sess. (1974), has disclosed no evidence of an intention to exempt governmental or non-qualified plans from the Act entirely or from the scope of Section 6058(a) specifically. To the extent it indicates anything at all, the history, like the statutory scheme itself, indicates an intention to grant both governmental and non-qualified plans limited exemption only from certain specified provisions of the Act. It also indicates that Congress was very much concerned with the question how far it should go in imposing ERISA requirements on governmental plans. With that preoccupation manifest, one cannot say that Section 6058(a) is ambiguous with respect to its applicability to governmental plans.