Bruce **PERLOWIN**, Plaintiff,

v.

Michael D. **SASSI**, District Director of Internal Revenue, San Francisco, California and United States of America, Defendants.

No. C–81–3541 RFP.

United States District Court,
N. D. California.

July 26, 1982.

Harvey J. Sande, Sande & Silber, Berkeley, Cal., for plaintiff.

Rodney H. Hamblin, and Michael D. Howard, Asst. U. S. Attys., San Francisco, Cal., for defendants.

## MEMORANDUM AND ORDER

PECKHAM, Chief Judge.

Plaintiff moves for summary judgment on the question of the validity of a termination assessment made by defendant District Director of the Internal Revenue Service ("the Service") in connection with plaintiff's 1980 taxes. Plaintiff seeks a declaration that the termination assessment is in-

valid; an injunction restraining defendants from any further collection proceedings relating to the termination assessment; and an order requiring defendants to return to plaintiff all assets seized and held pursuant to the termination assessment. Defendants have filed a cross motion for summary judgment, arguing that under the Anti-Injunction Act, 26 U.S.C. § 7421, this court lacks jurisdiction to grant the injunctive and declaratory relief requested. For the reasons given below, we find that we do not lack jurisdiction over this matter, and that summary judgment should be entered for plaintiff.

*Facts*

Plaintiff was arrested in Ukiah, California, in September, 1980. Federal charges were brought against him for smuggling marijuana and for unlawfully fleeing Florida in 1978 to avoid prosecution there for federal drug-related offenses. Subsequent to his arrest, the Service determined plaintiff's 1979 tax liabilities, and his tax liabilities through September 18, 1980, on the basis of seized books and records. The Service determined that collection of the 1979 taxes was in jeopardy, and assessed them pursuant to the jeopardy assessment provisions of the Internal Revenue Code, 26 U.S.C. § 6861. The Service also determined that tax collection for the then-incomplete year of 1980 was in jeopardy. Accordingly, the Service terminated plaintiff's 1980 year as of September 19, 1980, and assessed $362,990.00 in "1980" taxes, pursuant to the termination assessment provisions of the Internal Revenue Code, 26 U.S.C. § 6851. Five days later, the Service sent plaintiff a Notice of Jeopardy Assessment for 1979 and a Notice of Termination Assessment for 1980, pursuant to 26 U.S.C. §§ 6861(a) and 6851(a), respectively.

On or about November 18, 1980, the Service sent plaintiff a statutory notice of deficiency for the 1979 year, pursuant to 26 U.S.C. § 6861(b). This notice triggered plaintiff's right to file a petition for redetermination of his 1979 deficiency in the United States Tax Court, pursuant to 26 U.S.C. § 6213(a). Plaintiff did file such a petition.

The Service never mailed plaintiff a notice of deficiency for the 1980 year. Accordingly, plaintiff is not yet entitled to file a petition for redetermination of his 1980 deficiency in the Tax Court. The validity of the Service's refusal to send plaintiff a notice of deficiency for 1980 is the central issue in this lawsuit.

The Service has seized certain of plaintiff's assets in connection with the 1980 termination assessment, pursuant to 26 U.S.C. § 6331.

*Jurisdiction to Grant Injunctive Relief*

The Anti-Injunction Act, 26 U.S.C. § 7421, states in relevant part:

Except as provided in sections 6212(a) and (c), 6213(a), 6672(b), 6694(c), 7426(a) and (b)(1), and 7429(b), no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.

26 U.S.C. § 7421(a). Defendants contend that we are barred by this provision from enjoining the 1980 termination assessment. Plaintiff counters with the argument that this case falls within the "6213(a)" exception to the Anti-Injunction Act. That provision states:

Within 90 days, or 150 days if the notice is addressed to a person outside the United States, after the notice of deficiency authorized in section 6212 is mailed (not counting Saturday, Sunday, or a legal holiday in the District of Columbia as the last day), the taxpayer may file a petition with the Tax Court for a redetermination of the deficiency. *Except as otherwise provided in section 6851 or section 6861 no assessment of a deficiency in respect of any tax imposed by subtitle A or B, chapter 41, 42, 43, or 44 and no levy or proceeding in court for its collection shall be made, begun, or prosecuted until such notice has been mailed to the taxpayer, nor until the expiration of such 90-day or 150-day period, as the case may be, nor, if*

a petition has been filed with the Tax Court, until the decision of the Tax Court has become final. *Notwithstanding the provisions of section 7421(a), the making of such assessment or the beginning of such proceeding or levy during the time such prohibition is in force may .be enjoined by a proceeding in the proper court.*

26 U.S.C. § 6213(a) (emphasis added).

The termination assessment statute does not make clear whether a deficiency notice should have been sent under the facts of the instant case. The statute states in relevant part:

If an assessment of tax is made under the authority of subsection (a), the Secretary shall mail a notice under section 6212(a) for the taxpayer's full taxable year (determined without regard to any action taken under subsection (a)) with respect to which such assessment was made within 60 days after the later of (i) the due date of the taxpayer's return for such taxable year (determined with regard to any extensions), or (ii) the date such taxpayer files such return. Such deficiency may be in an amount greater or less than the amount assessed under subsection (a).

26 U.S.C. § 6851(b).

The statute does clearly indicate that where the Service has terminated a year in order to assess a taxpayer's taxes for a portion of that year, the Service *must* send a deficiency notice after the natural end of the year, within 60 days of either the due date of the taxpayer's tax return for the completed year, or the date the taxpayer actually filed the return. The statute thus assumes that the taxpayer will file a tax return. If the taxpayer does *not* file a return, the statute is ambiguous as to whether and when the Service must send a notice of deficiency. The Service interprets the statute as not requiring that a deficiency notice be sent at all where a taxpayer fails to file a tax return for a terminated year. The result of such an interpretation would be that the taxpayer who did not file a tax return for a terminated year would be precluded from filing in the Tax Court for a redetermination of the deficiency. That is the predicament of plaintiff in the instant case. He has not filed, and does not intend to file, a tax return for the 1980 year, apparently because he faces criminal and/or civil fraud penalties in connection with his tax status for that year. He does, however, wish to obtain a redetermination of his 1980 deficiency in the Tax Court. He argues that, under the circumstances, he should not be forced to file a tax return prior to gaining access to the Tax Court.

We are of the opinion that the Service's construction of the termination assessment provision is inconsistent with congressional intent. The statute was amended to its present form in 1978. Under prior law, there had been no requirement that the Service provide a deficiency notice to a taxpayer who had been subjected to termination assessment. Then, in *Laing v. United States*, 423 U.S. 161, 96 S.Ct. 473, 46 L.Ed.2d 416 (1976), the Supreme Court held that, in light of the plain language of the relevant statutory provisions and the underlying legislative history, the procedural safeguards mandated by the *jeopardy* assessment provisions would have to be read into the termination assessment provisions. These safeguards include a requirement that within 60 days after a jeopardy assessment, the taxpayer be sent a deficiency notice and be allowed to seek redetermination of the deficiency in the Tax Court. 26 U.S.C. §§ 6861(b) and 6213(a). Similarly, the Court held in *Laing*, within 60 days after a *termination* assessment, the Service should have sent deficiency notices to the petitioners, despite the absence of an explicit requirement to that effect in the termination assessment statute. In so ruling, the Court was particularly concerned that individuals subjected to the extraordinary remedy of termination assessment be afforded the opportunity to obtain a redetermination of the deficiency in the Tax Court. The Court noted:

Denial of an opportunity to litigate in the Tax Court is out of keeping with the thrust of the Code, which generally allows income-tax payers access to that

court. Where exceptions are intended, the Code is explicit on the matter. See, e.g., § 6871(b). Denying a Tax Court forum to a particular class of taxpayers is sufficiently anomalous that an intention to do so should not be imputed to Congress when the statute does not expressly so provide.

*Laing v. United States, supra*, 423 U.S. at 176, 96 S.Ct. at 482.

After *Laing*, Congress amended the termination provision, adding section 6851(b), which requires that deficiency notices be sent to taxpayers who have been subjected to termination assessments. However, Congress did not adopt the 60-day rule articulated in *Laing*. Instead, it provided that the Service could wait until the terminated year actually ended. Then, the Service would be required to send the taxpayer a deficiency notice within 60 days after the later of the due date of the tax return or the actual filing date of the return, as noted above.[1] This framework does enable the taxpayer to challenge the termination assessment in the Tax Court, but requires the taxpayer to wait until the terminated year has come to a natural close.

Even though Congress chose a procedure for sending notices of deficiency that differs slightly from the procedure articulated in *Laing*, it is clear that, in adding the deficiency notice provision to the termination assessment statute, Congress was motivated by the same concerns which had prompted the Supreme Court to import the jeopardy termination safeguards into the termination assessment context. Congress was trying to assure that redetermination in the Tax Court would ultimately be available to the taxpayer subjected to termination assessment. As was noted in the General Explanation of the Tax Reform Act of

---

1. Congress chose not to use the 60-day rule set forth in *Laing* because, in addition to providing year-end access to the Tax Court for taxpayers subjected to termination assessment, Congress also amended the Internal Revenue Code to provide an expedited mid-year administrative and judicial review. Congress determined that this review would constitute an adequate mid-year procedural safeguard, while eliminating the technical difficulties involved in a full mid-year redetermination by the Tax Court. *See* H.R.Rep.No.10612, 94th Cong., 2d Sess. 363 (1976).

Thus, pursuant to 26 U.S.C. § 7429, within 30 days of receipt from the Service of a written statement of the information on which it relied in making its termination assessment, a taxpayer may now request the Service to review the assessment. The Service determines whether the termination assessment was reasonable under the circumstances, and whether the amount demanded was appropriate. The Service notifies the taxpayer of its decision. The taxpayer may then bring a civil action in district court. The district court's review, like that of the Service, is limited to a determination whether the assessment was reasonable under the circumstances, and whether the amount demanded was appropriate.

Plaintiff did not take advantage of these expedited mid-year review procedures, although he could have done so even without a notice of deficiency. In our opinion, however, his failure to take advantage of these optional remedies does not affect his right to receive a notice of deficiency and file a petition for redetermination in the Tax Court. The mid-year proceedings would have resulted in only a determina-tion as to the "reasonableness" and "appropriateness" of the assessment. This would not have given him the full relief he would be entitled to in the Tax Court—a redetermination of the amount of the deficiency. In discussing the mid-year review mechanisms, Congress acknowledged that they were not intended to serve as a substitute for a full redetermination in the Tax Court:

In determining whether the amount assessed is appropriate under the circumstances, the court is not expected to attempt to determine ultimate tax liability. Rather, the issue to be determined is whether, based on the information then available, the amount of the assessment is reasonable. Thus, for example, in the absence of other evidence made available to the Internal Revenue Service before the proceeding or during the proceeding, an assessment of an estimate of the taxpayer's liability to date based on information in fact available to the Internal Revenue Service will be presumed to be reasonable.

A determination made under new section 7429 will have no effect upon the determination of the correct tax liability in a subsequent proceeding. The proceeding under the new provision is to be a separate proceeding which is unrelated, substantively and procedurally, to any subsequent proceeding to determine the correct tax liability, either by action for refund in a Federal district court or in the Court of Claims or by a proceeding in the Tax Court.

H.R.Rep.No.10612, 94th Cong., 2d Sess. 362 (1976).

1976 by the Staff of the Joint Committee on Taxation,

> Congress believes it is appropriate to allow a taxpayer who has been subjected to a termination assessment to contest the ultimate issue of his tax liability in the Tax Court in the same manner as is provided with respect to a taxpayer who has been subjected to a jeopardy assessment. Consequently, the Act provides that within 60 days after the later of the due date of the taxpayer's return for the full taxable year or the date on which the return is actually filed, the Service must send the taxpayer a notice of deficiency.

H.R.Rep.No.10612, 94th Cong., 2d Sess. 363 (1976) (footnote omitted).

In view of the fact that "[t]he jeopardy assessment and jeopardy termination provisions have long been treated in a closely parallel fashion," *Laing v. United States, supra,* 423 U.S. at 177, 96 S.Ct. at 482, it is appropriate to turn to the jeopardy assessment provisions in order to determine whether Congress's intent to have the Service send deficiency notices to taxpayers subjected to termination assessments extends to the taxpayer who has failed to file a tax return for the terminated year.

When a jeopardy termination occurs, the tax year has already ended. The Service is looking back to a taxpayer's completed year, and is pursuing an expedited course of tax collection because of the danger that the collection will be jeopardized by delay. The amount of the deficiency is calculated in accordance with a formula specified in 26 C.F.R. § 301.6211–1(a) (1981). In calculating that amount, the Service makes use of the taxpayer's tax return for the year which is the subject of the jeopardy assessment. If the taxpayer failed to file a tax return for that year, an alternate formula is used to calculate the deficiency. 26 C.F.R. § 301.6211–1(a) (1981).

■ This latter mechanism can be adapted to the termination assessment context. There, the Service waits until the natural close of the terminated year before sending a notice of deficiency. It must send such a notice if the taxpayer files a return. If the taxpayer files no return, 26 U.S.C. § 6851(b) should be read to require a deficiency notice to issue within 60 days of the later of the due date of the tax return for the taxpayer's taxable year during which the termination assessment was made, or the date the taxpayer files the return *if he or she files one.* If no return is filed, the Service should issue a deficiency notice within 60 days of the due date of the tax return, calculating the deficiency in accordance with the procedures for calculating deficiencies in jeopardy assessments where the taxpayer has failed to file a return.

■ Although section 6851 does not explicitly require a deficiency notice to be sent to a taxpayer subjected to termination assessment where he or she has failed to file a tax return for the terminated year, it is clear that Congress did not intend to preclude such taxpayers from obtaining review of their deficiency amounts in the Tax Court, any more than Congress intends to withhold that opportunity from taxpayers subjected to jeopardy assessments. Accordingly, a notice of deficiency should have issued in the instant case. Since it did not issue, this case falls within the "6213(a)" exception to the Anti-Injunction Act. We do not lack jurisdiction to enjoin the assessment.

### Jurisdiction to Grant Declaratory Relief

■ As noted above, in addition to seeking injunctive relief, plaintiff seeks a declaratory judgment stating that the 1980 termination assessment was invalid. Like injunctive relief, declaratory relief is disfavored in tax cases:

> In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1954 or a proceeding under section 505 or 1146 of title 11, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could

be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201. The Declaratory Judgment Act, *supra*, appears by its terms to be even more preclusive than the Anti-Injunction Act. This has led some commentators to speculate that the Declaratory Judgment Act was intended to preclude courts from granting declaratory relief in tax cases even where injunctive relief is allowable. *See Bob Jones University v. Simon*, 416 U.S. 725, 732 n.7, 94 S.Ct. 2038, 2044 n.7, 40 L.Ed.2d 496 (1974). The Supreme Court has not yet ruled on this question. *Id.* However, the lower federal courts which have considered the issue have consistently rejected the view of the commentators. They have followed the view that the Declaratory Judgment Act is coextensive with the Anti-Injunction Act. *See "Americans United," Inc. v. Walters*, 477 F.2d 1169, 1174–76 (D.C.Cir.1973), *rev'd on other grounds sub nom. Alexander v. "Americans United," Inc.*, 416 U.S. 752, 94 S.Ct. 2053, 40 L.Ed.2d 518 (1974); *Eastern Kentucky Welfare Rights Organization v. Simon*, 506 F.2d 1278, 1283–85 (D.C.Cir.1974), *vacated on other grounds*, 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976); *McGlotten v. Connally*, 338 F.Supp. 448, 452–53 (D.D.C.1972). Thus, "just as the Anti-Injunction Act does not bar this action, neither does the Declaratory Judgment Act." *Eastern Kentucky Welfare Rights Organization v. Simon*, *supra*, 506 F.2d at 1285. *Accord, Lugo v. Simon*, 453 F.Supp. 677, 689–90 (N.D.Ohio 1978), *rev'd in part on other grounds sub nom. Lugo v. Miller*, 640 F.2d 823 (6th Cir. 1981). *See also State of California by and through Younger v. Blumenthal*, 457 F.Supp. 1309, 1314–15 n.19 (E.D.Cal.1978).

Accordingly, since we have jurisdiction to enjoin the termination assessment in the instant case, we also have jurisdiction to grant declaratory relief.

**2.** We wish to note that this order is not intended to preclude the Service from pursuing ordinary tax collection procedures in connection

*Merits*

 In determining whether we have jurisdiction over the instant case, we have analyzed the merits of the controversy. For the reasons given above, the Service should have issued a notice of deficiency to plaintiff within 60 days of the due date of plaintiff's tax return for 1980. Since the Service did not do so, the 1980 termination assessment is invalid under 26 U.S.C. § 6213(a). We have jurisdiction to declare the assessment invalid, and to enjoin it, pursuant to that same statutory provision. We hereby declare it invalid. The Service is restrained from any further collection proceedings pursuant to the invalid assessment and is ordered to return to plaintiff all assets seized and held pursuant to the illegal assessment.[2]

SO ORDERED.

with plaintiff's 1980 taxes. We only preclude the Service from pursuing the extraordinary remedy of termination assessment.